# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG,

   Plaintiffs,

  v.

ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC.,

   Defendants.

Case No. 3:18-cv-01156-JCH

July 20, 2018

## MEMORANDUM IN SUPPORT OF SPECIAL MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO STATE A CLAIM

Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel: 702-420-2001
ecf@randazza.com

Marc J. Randazza, *pro hac vice* forthcoming
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Tel: 702-420-2001
ecf@randazza.com

Attorneys for Infowars Defendants

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

1.0   FACTUAL BACKGROUND ................................................................. 2

2.0   LEGAL STANDARD ................................................................. 4

   2.1   *Anti-SLAPP Standard* ................................................................. 4

   2.2   *Application of Anti-SLAPP in Federal Court* ................................................ 5

   2.3   *Dismissal Under Rule 12(b)(6)* ................................................................. 6

3.0   ANALYSIS ................................................................. 7

   3.1   *This Lawsuit Should be Dismissed Under the Connecticut Anti-SLAPP Statute* ......... 7

   3.2   *Defendants' Speech is Constitutionally Protected* ....................................... 9

   3.3   *The Speech is Protected as Fair Comment* ................................................ 13

   3.4   *Most of the Allegations are Time-Barred* ................................................ 14

   3.5   *None of the Claims are Plausible* ................................................................. 15

      3.5.1   Defendants are Not Liable for False Light Invasion of Privacy ........................... 15

      3.5.2   Defendants are Not Liable for Defamation *Per Quod* or *Per Se* ........................... 18

      3.5.3   Defendants are Not Liable for Intentional Infliction of Emotional Distress .......... 21

      3.5.4   Defendants are Not Liable for Negligent Infliction of Emotional Distress ........... 23

      3.5.5   Plaintiffs' Conspiracy Claims Lack Merit ................................................ 25

      3.5.6   Defendants are Not Liable Under CUTPA ................................................ 26

      3.5.7   Defendants are Not Agents of Each Other and the Complaint Insufficiently Pleads Specific Liability ................................................ 27

4.0   CONCLUSION ................................................................. 31

## TABLE OF AUTHORITIES

**CASES**

*Abbas v. Foreign Policy Grp., LLC*,
  783 F.3d 1328 (D.C. Cir. 2015) ............................................................. 5

*Abramson v. Pataki*,
  278 F.3d 93 (2d Cir. 2002) .................................................................... 18

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH),
  2004 U.S. Dist. LEXIS 8546 (D. Conn. May 14, 2004) (Hall, U.S.D.J.) ................ 24

*Adams v. I-Flow Corp.*, Case No. CV09-09550 R (SSx),
  2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010) ................................ 29

*Adelson v. Harris*,
  774 F.3d 803 (2d Cir. 2014) ............................................................. 5, 6

*Algarin v. Town of Wallkill*,
  421 F. 3d 137 (2d Cir. 2005) ............................................................. 16

*Allen v. Verizon Wireless*,
  2013 U.S. Dist. LEXIS 80228 (D. Conn. June 6, 2013) .................................. 15

*Appleton v. Bd. of Educ.*,
  254 Conn. 205, 757 A.2d 1059 (2000) ................................................... 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................. 6, 12, 30

*Avery v. City of W. Haven*, 3:99-CV-00013 (EBB),
  2001 U.S. Dist. LEXIS 24394 (D. Conn. Feb. 1, 2001) .............................. 22, 23

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................. 6, 26, 30

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
  151 F. Supp. 3d 287 (E.D.N.Y. 2015) .................................................... 19

*Berry v. Ronald*, No. FBTCV175032673,
  2018 Conn. Super. LEXIS 324 (Super. Ct. Feb. 20, 2018) ............................... 17

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ......................................................... 6, 7, 11, 12

*Biro v. Conde Nast*,
  964 F. Supp. 2d 255 (S.D.N.Y. 2013) .................................................... 7

*Bose Corp. v. Consumers Union, Inc.*,
  466 U.S. 485 (1984) ..................................................................... 12

*Brady v. Bickford*, No. KNLCV116007541,
    2015 Conn. Super. LEXIS 585 (Super. Ct. Mar. 13, 2015) ................................................ 14, 15

*Brewer v. Memphis Pub. Co., Inc.*,
    626 F.2d 1238 (5th Cir. 1980) .................................................................................................. 10

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
    691 F. App'x 515 (10th Cir. 2017) ........................................................................................... 29

*Burke v. State*, No. MMXCV065000409S,
    2010 Conn. Super. LEXIS 282 (Super. Ct. Feb. 2, 2010) ......................................................... 23

*Carson v. Allied News Company*,
    529 F.2d 206 (7th Cir. 1976) ..................................................................................................... 10

*Celle v. Filipino Reporters Enters.*,
    209 F.3d 163 (2d Cir. 2000) ...................................................................................................... 12

*Chaiken v. W Publishing Corp.*,
    907 F. Supp. 689 (S.D.N.Y. 1995), aff'd, 119 F.3d 1018 (1997) ............................................ 21

*Charles Parker Co. v. Silver City Crystal Co.*,
    142 Conn. 605, 116 A.2d 440 (1955) ........................................................................................ 13

*Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*,
    620 F.3d 146 (2d Cir. 2010) ........................................................................................................ 2

*City of Roseville v. Zisk*, No. C073496,
    2015 Cal. App. Unpub. LEXIS 4193 (June 16, 2015) ................................................................ 8

Cole v. Patricia A. Meyer & Associates,
    2016 Cal. App. 4th 1095 (2012) ............................................................................................. 7, 8

*Colon v. Town of W. Hartford*,
    2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001) ........................................................... 17, 19

*Combs v. Stryker Corp.*, No. 2:09-cv-02018-JAM-GGH,
    2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009) ................... 29, 30

*Comm'r, Dep't of Emergency Servs. & Pub. Prot. v. Freedom of Info. Comm'n*,
    No. HHBCV156029797S, 2016 Conn. Super. LEXIS 786 (Super. Ct. Apr. 8, 2016) .............. 8

*Cowras v. Hard Copy*, No. 3:95cv99 (AHN),
    1997 U.S. Dist. LEXIS 23514 (D. Conn. Sep. 29, 1997).......................................................... 16

*Crane v. Northwestern CT Young Mens Christian Assoc.*, No. CV044001019,
    2005 Conn. Super. LEXIS 1614 (Sup. Ct. 2005) ..................................................................... 23

*Cuba v. Pylant*,
    814 F.3d 701 (5th Cir. 2016).......................................................................................................1

*Curtis Publ'g Co. v. Butts*,
    388 U.S. 130 (1967) ......................................................................................................................6

RANDAZZA | LEGAL GROUP

*Daddona v. Liberty Mobile Home Sales, Inc.*,
209 Conn 243, 550 A.2d 1061 (1988) ................................................................ 26

*Dameron v. Washington Magazine, Inc.*,
250 U.S. App. D.C. 346, 779 F.2d 736 (D.C. Cir. 1985) ................................... 10

*Davis v. Davis*,
112 Conn. App. 56, 962 A.2d 140 (2009) ........................................................... 22

*Degroat v. Cooper*,
2014 U.S. Dist. LEXIS 66089 (D.N.J. May 14, 2014) ...................................... 16

*Dellacamera v. New Haven Register*, No. CV000436560,
2002 Conn. Super. LEXIS 3403 (Conn. Super. Ct. Oct. 28, 2002) .................... 13

*Devone v. Finley*, No. 3:13-CV-00377 (CSH),
2014 U.S. Dist. LEXIS 36356 (D. Conn. Mar. 20, 2014) ............................. 18, 19

*Diaz v. NBC Universal, Inc.*,
337 F. App'x 94 (2d Cir. 2009) ......................................................................... 16

*Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM,
2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009) ..................................... 30

*Doe v. Yale Univ.*,
252 Conn. 641, 748 A.2d 834 (2000) ................................................................. 28

*Dong v. Board of Trustees of Leland Stanford University*,
191 Cal. App. 3d 1572, 236 Cal. Rptr. 912 (1987) ........................................... 20

*Dow v. New Haven Indep., Inc.*,
41 Conn. Supp. Ct. 31 (1987) ............................................................................ 17

*Eder Bros. v. Wine Merchants. Of Conn., Inc.*
275 Conn. 363 (Conn. 2005) .............................................................................. 26

*Elec. Assocs., Inc. v. Automatic Equip. Dev. Corp.*,
185 Conn. 31, 440 A.2d 249 (1981) ................................................................... 28

*Ernst v. Carrigan*,
814 F.3d 116 (2d Cir. 2016) ................................................................................. 4

*Estate of Gomez v. Larson*, CV 980084646,
1999 Conn. Super. LEXIS 1535 (Super. Ct. June 8, 1999) ............................... 20

*Fichera v. Mine Hill Corp.*,
207 Conn. 204, 541 A.2d 472 (1988) ................................................................. 15

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000) .............................................................................. 13

*Friedman v. Boston Broadcasters, Inc.*,
402 Mass. 376, 522 N.E.2d 959 (1988) ............................................................. 19

*Gambardella v. Apple Health Care, Inc.*,
  291 Conn. 620, 969 A.2d 736 (Conn. 2009) ........................................ 18

*Gambardella v. Apple Health Care, Inc.*,
  86 Conn. App. 842, 863 A.2d 735 (2005) ........................................ 21

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ........................................................ 11, 20

*Gertz v. Robert Welch*,
  418 U.S. 323 (1974) ................................................................. 9

*Gilmore v. DJO, Inc.*,
  663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009) .................... 30

*Goodrich v. Waterbury Republican-American, Inc.*,
  188 Conn. 107, 448 A.2d 1317 (1982) ........................................ 13, 16, 17, 19

*Greenbelt Cooperative Publishing Association v. Bresler*,
  398 U.S. 6 (1970) ................................................................. 11

*Grigorenko v. Pauls*,
  297 F. Supp. 2d 446 (D. Conn. 2003) ........................................ 15

*Harasz v. Katz*,
  239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) ........................................ 12

*Harp v. King*, 266 Conn.
  747, 835 A.2d 953 (2003) ........................................ 25

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*,
  296 Conn. 315, 994 A.2d 153 (2010) ........................................ 27

*Haskins v. Zimmer Holdings, Inc*., No. 1:09-CV-236,
  2010 U.S. Dist. LEXIS 7690, 2010 WL 342 (D. Vt. Jan. 29, 2010) .................... 29, 30

*Hawker v. Sandy City Corp*.,
  774 F.3d 1243 (10th Cir. 2014) ........................................ 8

*Haywood v. St. Michael's College*,
  536 F. App'x 123 (2d Cir. 2013) ........................................ 7

*Hendrikx v. State*, No. 2:13-cv-0087-RJS,
  2013 U.S. Dist. LEXIS 155217 (D. Utah Oct. 29, 2013) ........................ 29

*Henry v. Lake Charles Am. Press LLC*,
  566 F.3d 164 (5th Cir. 2009) ........................................ 5

*Hotchner v. Castillo-Puche*,
  551 F.2d 910 (2d Cir. 1977) ........................................ 13, 19

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018) ........................................ 12

RANDAZZA | LEGAL GROUP

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ............................................................ 5

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
   596 F.Supp.2d 497 (D. Conn. 2009) ......................................................... 19

*Izzarelli v. R.J. Reynolds Tobacco Co.*,
   117 F. Supp. 2d 167 (D. Conn. 2000) ...................................................... 14

*J.K. Scanlan Co. v. Constr. Grp., Inc.*,
   80 Conn. App. 345 (2003) ........................................................................ 9

*Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523,
   2010 U.S. Dist. LEXIS 59869 (W.D. Pa. June 16, 2010) ....................... 30

*Langer v. Mail Delivery & Courier Services, Inc.*, CV054008535,
   2006 Conn. Super. LEXIS 336 (Sup. Ct. 2006) ...................................... 23

*Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB),
   2014 U.S. Dist. LEXIS 140132 (D. Conn. Sep. 30, 2014) ...................... 18

*Lerman v. Flynt Distrib. Cor.*,
   745 F.2d 123 (2d Cir. 1984) .......................................................... 7, 10, 20

*Lewis v. Michigan Millers Mutual Ins. Co.*,
   154 Conn. 660, 228 A.2d 803 (1967) ...................................................... 28

*Lewis v. Newtown Bd. of Educ.*, No. CV156075650S,
   2018 Conn. Super. LEXIS 934 (Super. Ct. May 7, 2018) .......................... 8

*Liberty Synergistics Inc. v. Microflo Ltd.*,
   718 F.3d 138 (2d Cir. 2013) ...................................................................... 5

*Machleder v. Diaz*,
   801 F.2d 46 (2d Cir. 1986) ...................................................................... 16

*McGaffin v. Roberts*,
   193 Conn. 393, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050 (1985) ............................. 14

*McLaughlin Ford, Inc. v. Ford Motor Co.*,
   192 Conn. 558, 473 A.2d 1185 (1984) .................................................... 27

*Meeropol v. Nizer*,
   560 F.2d 1061 (2d Cir. 1977) cert. denied, 434 U.S. 1013 (1978) .......... 10

*Mercer v. Brunt*,
   272 F. Supp. 2d 181, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) ..... 22

*Miles v. City of Hartford*,
   719 F. Supp. 2d 207 (D. Conn. 2010) ...................................................... 16

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) .................................................................................... 19

RANDAZZA | LEGAL GROUP

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016) ........................................ 17

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) .................................................. 8

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ................................................... 6, 9, 13

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) ........................................................ 27

*Nat'l Shooting Sports Found., Inc. v. Malloy*,
   986 F. Supp. 2d 118 (D. Conn. 2013) ..................................... 8

*NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*,
   745 F.3d 742 (5th Cir. 2014) ................................................. 5

*Olson v. Bristol-Burlington Health District*,
   87 Conn. App. 1, 863 A.2d 748 (2005) .................................. 24

*Packingham v. North Carolina*,
   137 S. Ct. 1730 (2017) ......................................................... 8

*Pan Am Sys. v. Atl. Ne. Rails & Ports, Inc.*,
   804 F.3d 59 (1st Cir. 2015) ................................................. 17

*Perodeau v. Hartford*,
   259 Conn. 729, 792 A.2d 752 (2002) .................................... 24

*Peruta v. Freedom of Info. Comm'n*, No. HHBCV135015745S,
   2013 Conn. Super. LEXIS 2572 (Super. Ct. Nov. 7, 2013) ......... 8

*Peterson v. Breg, Inc.*, 2:09-cv-2044 JWS,
   2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010) ........... 29

*Phantom Touring, Inc. v. Affiliated Publ'ns*,
   953 F.2d 724 (1st Cir. 1992) ............................................... 17

*Price v. Viking Penguin, Inc.*,
   676 F. Supp. 1501 (D. Minn. 1988) ........................................ 9

*Roberts v. Kelley*, CV 980418904,
   1999 Conn. Super. LEXIS 908 (Super. Ct. Apr. 8, 1999).......... 22

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) ................................................ 5

*Schmidt v. Housing Authority of the City of Bristol*, No. 065001979,
   2007 Conn. Super. LEXIS 2617 (Sup. Ct. Oct. 4, 2007) .......... 23

*Scott v. Town of Monroe*,
   306 F. Supp. 2d 191 (D. Conn. 2004) ..................................... 6

*Sedensky v. Freedom of Info. Comm'n*, No. HHBCV136022849S,
  2013 Conn. Super. LEXIS 2716 (Super. Ct. Nov. 26, 2013)......................... 8

*Sentementes v. General Elec. Co.*,
  2014 WL 2881441 (D. Conn. June 25, 2014) ........................................... 7

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ................................................................................ 5

*Sherman v. Stryker Corp.*, No SAVC 09-224 JVS (ANx),
  2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009)...................... 30

*Simms v. Seaman*,
  308 Conn. 523, 69 A.3d 880 (Conn. 2013) ........................................... 18

*Sinotte v. City of Waterbury*,
  121 Conn. App. 420, 995 A.2d 131 (2010) ........................................... 15

*Skakel v. Grace*,
  2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 (D. Conn. March 7, 2014) ........................ 19

*St. Amant v. Thompson*,
  390 U.S. 727 (1968) .............................................................................. 12

*Strada v. Conn. Newspapers, Inc.*,
  193 Conn. 313, 477 A.2d 1005 (1984)................................................. 20

*Suburban Restoration Co. v. ACMAT Corp.*,
  700 F.2d 98 (2d Cir. 1983) ................................................................... 27

*TD Props., LLC v. VP Bldgs., Inc.*,
  602 F. Supp. 2d 351 (D. Conn. 2009) .................................................. 28

*Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH),
  2016 U.S. Dist. LEXIS 25232 (D. Conn. Feb. 29, 2016) (Hall, U.S.D.J.) .............................. 21

*Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLICV106002895S,
  2013 Conn. Super. LEXIS 2957 (Super. Ct. Dec. 20, 2013) .................... 14

*Timmons v. Linvatec Corp.*,
  263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010) ........... 29

*Tomlinson v. Bd. of Educ.*,
  226 Conn. 704, 629 A.2d 333 (1993).................................................... 28

*Tracy v. New Milford Public Schools*,
  101 Conn. App. 560, 922 A.2d 280, cert. denied, 284 Conn. 910, 931 A.2d 935 (2007)......... 22

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
  190 F.3d 963 (9th Cir. 1999) ................................................................. 5

*United States v. Alvarez*,
  567 U.S. 709 (2012) .............................................................................. 27

*Urban v. Hartford Gas Co.*,
139 Conn. 301, 93 A.2d 292 (1952)..................................................................... 20

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
517 F.3d 104 (2d Cir. 2008) ................................................................................. 6

*Watts v. Chittenden*,
301 Conn. 575, 22 A.3d 1214 (2011)............................................................. 14, 15

*Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S,
2011 Conn. Super. LEXIS 181 (Super. Ct. Jan. 19, 2011) .................................. 25

*Weldon v. MTAG Servs., LLC*, No. 3:16-cv-783 (JCH),
2017 U.S. Dist. LEXIS 27660 (D. Conn. Feb. 28, 2017).................................... 27

*Woodcock v. Journal Publishing Co., Inc.*,
230 Conn. 525, 646 A.2d 92 (Conn. 1994) ........................................................ 18

*Yavis v. Sullivan*,
137 Conn. 253, 76 A.2d 99 (1950)...................................................................... 20

*Zupnik v. Associated Press, Inc.*,
31 F. Supp. 2d 70 (D. Conn. 1998) ................................................................ 9, 10

## STATUTES

Conn. Gen. Stat. § 34-275a ........................................................................................ 14

Conn. Gen. Stat. § 42-11a .......................................................................................... 26

Conn. Gen. Stat. § 42-110g ........................................................................................ 14

Conn. Gen. Stat. § 52-196a ................................................................................. *passim*

Conn. Gen. Stat. § 52-577 .......................................................................................... 14

Conn. Gen. Stat. § 52-584 .......................................................................................... 14

Conn. Gen. Stat. § 52-597 .......................................................................................... 14

NRS 41.650 .................................................................................................................. 5

Tex. Civ. Prac. & Rem. Code § 27.001 ....................................................................... 1

## OTHER AUTHORITIES

1 Restatement (Second), Torts § 46 (1965) ............................................................... 22

2017 Legis. Bill Hist. CT S.B. 981 (Mar. 31, 2017)................................................... 4

Restatement (Second) of Torts § 652G (Am. Law Inst. 1977)................................... 13

Restatement (Third) of Agency § 7.03 (2006) .......................................................... 29

**RULES**

Fed. R. Civ. P. 12 ................................................................................................ 6, 7

Fed. R. Civ. P. 4 ................................................................................................... 14

Fed. R. Civ. P. 8 .............................................................................................. 12, 29

Tex. R. Civ. P. 106 .............................................................................................. 14

RANDAZZA | LEGAL GROUP

## MEMORANDUM OF POINTS AND AUTHORITIES

The assassination of President Kennedy.  The lunar landings.  The September 11 attacks. Sandy Hook.  From these shocking events emerged some people who thought them so disruptive that they questioned whether they even happened, scouring records in support of evidence that might prove them hoaxes.  Alex Jones, host of a radio show and publisher of InfoWars, firmly believes that the December 14, 2012, shooting at Sandy Hook Elementary School was **not** a hoax. As a proponent of free and open debate, he **permitted others** to state their opinions that it was a hoax and comment on the evidence in support of those opinions.

A *New York Times* article helped lead to the publication of the records of Project MKUltra, subject of conspiracy theories before then.  Bob Woodward and Carl Bernstein relied on allegations from "Deep Throat" to link the Nixon Administration to the Watergate break-in.  Such journalism, questioning official narratives, would be chilled if reporters were subject to liability if they turned out to be wrong.

Plaintiffs suffered a horrible tragedy.  Alex Jones and InfoWars are not responsible for that tragedy.  To punish them for First Amendment protected speech on this matter of public concern will not bring back the lives lost.  To stifle the press (by making them liable for merely interviewing people who have strange theories) will simply turn this human tragedy into a Constitutional one.

Defendants, therefore, file a special motion to dismiss pursuant to Conn. Gen. Stat. § 52-196a[1] or, alternately, to dismiss for failure to state a claim.[2]

---

[1]    Defendants, however, waive any fees over and above the sum of $1.  They have no desire to collect money from the parents of Sandy Hook victims.  Nevertheless, the First Amendment implications of this case are so significant, that they felt that they must invoke the Anti-SLAPP law.

[2]    To the extent applicable, this motion is also brought under the Texas Citizens' Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001, *et seq.*  Unlike the Connecticut counterpart, discussed below, the Texas law does not require the showing of a matter of public concern and requires, instead, of probable cause of prevailing, a "*prima facie* case for each essential element of the claim." *Id.* § 27.005; *see also Cuba v. Pylant*, 814 F.3d 701, 707 (5th Cir. 2016). No choice of law analysis is required, as dismissal is warranted under either act; since dismissal is proper as a matter of law, there can be neither probable cause of prevailing nor a *prima facie* case, to the extent these standards differ.

## 1.0    FACTUAL BACKGROUND

On December 14, 2012, Adam Lanza shot and killed 20 first-grade children and 6 adults at Sandy Hook Elementary School.   Complaint, Dkt. No. 1-1, at ¶¶ 1–3.[3]   Plaintiffs are the immediate family of six victims, plus a first-responder to the scene.  *Id*. at ¶ 21.  Defendant Alex Jones is a journalist and radio host who is the publisher of the Infowars.com and PrisonPlanet.com websites.  *Id*. at ¶ 30.  Infowars, LLC produces and broadcasts Mr. Jones's programming.  *Id*. at ¶ 31.  Free Speech Systems, LLC owns Infowars.com.  *Id*. at ¶ 32.  Infowars Health, LLC and Prison Planet TV, LLC are also owned and operated by Mr. Jones, but no specific allegations of fault are expressly attributed to their individual actions in the Complaint.[4]  *See id*. at ¶¶ 33–35 and *passim*.

Wolfgang Halbig claims the shooting was a hoax.  Complaint at ¶ 58.  Mr. Jones and the other Infowars Defendants are generally alleged to have reported on Halbig's theory by having him as a guest on a radio show, disclosing his website's URL, and sending videographer(s) and a reporter to document Mr. Halbig's activities.  *Id*. at ¶¶ 58–85.  Plaintiffs generally assert that reporting on the hoax theory implies that Plaintiffs "fabricated the deaths of their loved ones."  *Id*. at ¶ 110 and *passim*.

Despite the Complaint being filled with statements attributed to Mr. Jones and the Infowars Defendants, few are explicitly identified as being false.  And, not a single plaintiff was ever named by any Defendant.  Rather, the Complaint tends to assert that reasonable listeners "would understand these statements to assert that the Sandy Hook massacre was staged, and that the plaintiffs fabricated the deaths of their loved ones."  *Id*. at ¶ 118 (Jan. 27, 2013); ¶ 126 (May 27, 2013); ¶¶ 138 & 142 (May 13, 2014, being a "clear implication"); ¶ 163 (Sept. 26, 2014); ¶ 169

---

[3]    For purposes of this motion, Defendants recite the factual allegations as pleaded by Plaintiffs in the Complaint, as, for a motion to dismiss, the court "constru[es] the complaint liberally, accepting all [well-pleaded] factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor."  *Chase Grp. Alliance LLC v. N.Y.C. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (citation and internal quotations omitted). Though Defendants may agree with some of the factual allegations, the recitation of the facts herein should not be construed as an admission of all alleged facts, nor should it be deemed as relieving Plaintiffs of any evidentiary burdens they may have under the applicable anti-SLAPP laws.

[4]    Collectively, Infowars, LLC, Infowars Health, LLC, Prison Planet TV, LLC, and Free Speech Systems, LLC, shall be referred to as "Infowars Defendants."

(Dec. 12, 2014); ¶ 177 (Dec. 28, 2014); ¶ 186 (Jan. 13, 2015); ¶ 200 (Mar. 4, 2015); ¶ 208 (May 28, 2015); ¶ 219 (May 29, 2015, being "clearly suggesting"); ¶ 226 (Jul. 7, 2015); ¶ 233 (Nov. 17, 2016); ¶ 242 (Nov. 18, 2016, being a "clear implication"); ¶ 260 (Mar. 8, 2017, the understanding being "plaintiffs participated in a fraud that was based on lying about the deaths); ¶¶ 266 & 272 (Apr. 22, 2017, and that Defendants would be understood to state Plaintiffs were "Sandy Hook Vampires"); ¶ 274 (Apr. 28, 2017); ¶ 276 (Jun. 13, 2017); ¶¶ 287 & 297 (Jun. 15, 2017); ¶ 316 (Jun. 18, 2017); and ¶ 333 (Jun. 26, 2017).

The allegations in the Complaint as to Mr. Jones's statements are all either summaries of what others said, questions about evidence, or opinions as to the credibility of evidence. The sole exception is from December 28, 2014, more than three years before the Complaint was filed, where Mr. Jones referred to the shooting as a "hoax" and "fake" in less than two minutes of an 83-minute show. *Id.* at ¶¶ 173 & 176. However, Mr. Jones has come to the conclusion that the shooting happened. Complaint at ¶ 314. He has said so many times since then.

Explicit allegations of false statements in the Complaint only include September 25, 2014, statements about FBI crime statistics purporting to show no one was killed at Sandy Hook (¶¶ 146 & 148),[5] and Nov. 28, 2016, statements by non-party Owen Shroyer, on InfoWars, that Plaintiff Lafferty, in a November 25, 2016 *USA Today* op-ed, had falsely accused Mr. Jones of calling the shooting a hoax and that she had asserted President Trump needed to face a loved one's death. *See* Erica Lafferty, "Mr. Trump, denounce Alex Jones: Sandy Hook principal's daughter," USA TODAY (Nov. 25, 2016), attached as **Exhibit 2**;[6] *see also* Owen Shroyer response video.[7] Ms. Lafferty specifically wrote "I've faced the cold, hard truth of the murder of my mother, and

---

[5]     Specifically, Table 8 of the FBI's Crime in the United States 2012 Report, Connecticut, Offenses Known to Law Enforcement, by City, 2012 lists "0" for Newtown, under "Murder and nonnegligent manslaughter." *See* **Exhibit 1**, available at: <https://ucr.fbi.gov/crime-in-the-u.s/2012/crime-in-the-u.s.-2012/tables/8tabledatadecpdf/table-8-state-cuts/table_8_offenses_known_to_law_enforcement_by_connecticut_by_city_2012.xls> (last accessed Jul. 20, 2018).

[6]     Available at: <https://www.usatoday.com/story/opinion/2016/11/25/donald-trump-sandy-hook-alex-jones-column/94335420/> (last accessed July 20, 2018).

[7]     Available at: <https://www.mediamatters.org/embed/clips/2016/11/29/51281/alexjones-alexjones-20161128-sandyhook> (last accessed July 20, 2018).

it's time for Trump to face one of his own." *See* **Exhibit 2**.  Mr. Shroyer's actual response was that it "sounds like she's calling for Trump to have to face someone, a loved one, dying from gun violence."[8]  None of these allegations give rise to actionable claims.

## 2.0   LEGAL STANDARD

### 2.1   Anti-SLAPP Standard

On June 30, 2017, Public Act 71, entitled "An Act Concerning Strategic Litigation Against Public Participation and a Special Motion to Dismiss" was enacted in Connecticut, going into effect January 1, 2018.  The Act was later codified at Conn. Gen. Stat. § 52-196a (hereinafter "Connecticut anti-SLAPP statute").[9]  As set forth in the Joint Favorable Report of the Senate Judiciary Committee, the reason for the law was that the "CT Broadcasters Association wanted to see legislation end these types of lawsuits (SLAPP) which affect the media the most in their exercise of first amendment rights to free speech and not have to fight constant frivolous and often expensive litigation."  2017 Legis. Bill Hist. CT S.B. 981 (Mar. 31, 2017); *see also* Statement of Rep. William Tong, Connecticut House Transcript (Jun. 5, 2017) (the statute protects against suits "designed to chill free speech and the expression of constitutional rights" by filing a "special motion to dismiss … a frivolous or abusive claim that has no merit.").[10]

Pursuant to Section (b) of the Connecticut anti-SLAPP statute, "[i]n any civil action in which a party files a complaint, … against an opposing party that is based on the opposing party's exercise of its right of free speech … under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint…."  Conn. Gen. Stat. § 52-196a(b).  Section (e)(3) sets forth the applicable standard:

> The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence, that the opposing party's complaint … is based on the moving party's exercise of its right of free speech …

---

[8]   *See* Owen Troyer response video, *supra*, at 02:45–03:05.
[9]   "SLAPP is an acronym for a 'strategic lawsuit against public participation,' which is a suit that is brought primarily to chill the valid exercise of a defendant's right to free speech[.]"  *Ernst v. Carrigan*, 814 F.3d 116, 117 (2d Cir. 2016).
[10]   Available at: <https://cga.ct.gov/2017/trn/H/2017HTR00605-R01-TRN.htm> (last accessed Jul. 20, 2018).

> under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint … sets forth with particularity the circumstances giving rise to the complaint … and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint ….

Conn. Gen. Stat. § 52-196a(e)(3).   As set forth below, the Complaint is based on Defendants exercise of free speech in connection with a matter of public concern and Plaintiffs lack probable cause of prevailing on the merits.

## 2.2    Application of Anti-SLAPP in Federal Court

The Connecticut Anti-SLAPP law applies in this Court.   Courts in this Circuit rely on Justice Stevens's concurring opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 425 n. 8 (2010) to find that Federal rules cannot supersede state substantive rights. *See In re Trilegiant Corp*., 11 F. Supp. 3d 82, 115-16 (D. Conn. 2014).   State anti-SLAPP statutes are typically found to be substantive and, thus, applicable.   *See, e.g.*, *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (applying California statute); *Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 168-169 (5th Cir. 2009) (applying Louisiana statute); *Godin v. Schencks*, 629 F.3d 79, 86-87 (1st Cir. 2010) (applying Maine statute); *but see Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328 (D.C. Cir. 2015) (declining to apply D.C. statute based on procedural nature).[11]   The Second Circuit Court of Appeals has permitted a state anti-SLAPP statute to be applied.   *See Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (applying Nevada statute); *Liberty Synergistics Inc. v. Microflo Ltd*., 718 F.3d 138 (2d Cir. 2013) (applying California statute).   The Texas anti-SLAPP law has also been applied in diversity matters.   *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 752-53 (5th Cir. 2014).   The substantive rights to immunity from suit and fee-shifting will ordinarily apply, whereas procedural aspects such as filing deadlines and discovery stays would not apply.   *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (discussing California statute).

---

[11]    Some anti-SLAPP statutes explicitly state the substantive rights created by the statutes.  *See, e.g.,* NRS 41.650 (Nevada anti-SLAPP statute providing that "[a] person who engages in a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication").

The Connecticut anti-SLAPP statute is new and no court, state or Federal, has issued a published opinion interpreting or applying it. There is no reason to believe that the substantive rights in the Connecticut statute would be applied differently than the others the courts have found applicable. The operative provision, Section (b), focuses on the substantive right to dismissal in the face of a lawsuit arising from free speech on a matter of public concern. *See* Conn. Gen. Stat. § 52-196a(b). Section (e)(3) addresses the substantive burden. *See* Conn. Gen. Stat. § 52-196a(e)(3). And, Section (f) provides a substantive right to attorneys' fees. *See* Conn. Gen. Stat. § 52-196a(f). Those provisions are as substantive, and therefore as applicable, as those of the laws of the states discussed above.

### 2.3   Dismissal Under Rule 12(b)(6)

An action may be both dismissed under state anti-SLAPP law and Fed. R. Civ. P. 12(b)(6). *See Adelson*, 774 F.3d at 805. In considering a motion under Fed. R. Civ. P. 12 (b)(6), the plaintiffs must have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of the motion, the allegations are accepted as true. *Twombly*, *supra*, at 572. While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims…." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004). Nothing in the Complaint gives rise to viable claims against Defendants.

Furthermore, public figures, including limited-purpose public figures, must meet a heightened standard and "show that the statements were made with 'actual malice' – that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964) (public officials); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (public

figures); *Lerman v. Flynt Distrib. Cor.*, 745 F.2d 123, 137, 139 (2d Cir. 1984) (limited-purpose public figures)).  Actual malice "must be alleged plausibly in accordance with Rule 8." *Biro*, 807 F.3d at 545.

The Second Circuit has affirmed the dismissal of defamation claims for failure to plausibly plead facts that satisfy the exacting actual malice standard.  *See, e.g., Biro*, 807 F.3d at 546; *Haywood v. St. Michael's College*, 536 F. App'x 123, 124 (2d Cir. 2013) (summary order) (stating that "the complaint simply does not plausibly allege that [defendants] acted with actual malice"); *Sentementes v. General Elec. Co.*, 2014 WL 2881441, *11 (D. Conn. June 25, 2014) (dismissing defamation claim where plaintiffs failed to allege facts tending to show knowledge of falsity or reckless disregard for the truth, "despite using the word 'maliciously' in their pleadings"). The Southern District of New York emphasized that "in defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Conde Nast*, 964 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

## 3.0   ANALYSIS

This is a quintessential SLAPP suit.  Defendants are alleged to have spoken on matters of public concern and the allegations arise solely from that speech.   All of the speech is constitutionally protected and the claims are otherwise unmeritorious.

### 3.1   This Lawsuit Should be Dismissed Under the Connecticut Anti-SLAPP Statute

The Connecticut anti-SLAPP statute provides a proper basis for dismissal.  The first element, that the civil action is in connection with the exercise of free speech, is met.  The "right of free speech" under the statute "means communicating, or conduct furthering communication, in a public forum on a matter of public concern."  *See* Conn. Gen. Stat. § 52-196a(a)(2).  The causes of action are all based on "statements" or so-called "lies" attributed to Defendants.  *See, e.g.*, Dkt. No. 1-1 at ¶¶ 338, 348, 361, 374, & 386.  Defendants made these statements on public forums, namely online web sites that were accessible to the general public.  A generally accessible web site is considered a public forum for purposes of anti-SLAPP statutes.  *See, e.g., Cole v.*

*Patricia A. Meyer & Associates*, 2016 Cal. App. 4th 1095, 1121 (2012); *see also Packingham v. North Carolina,* 137 S. Ct. 1730, 1735 (2017) (defining a public forum as a place "all persons have access to … speak and listen, and then, after reflection, speak and listen once more" and noting that "[w]hile in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear.  It is cyberspace—the 'vast democratic forums of the Internet' in general.") (citation omitted).  None of the statements meet any category of unprotected speech under the First Amendment.

Nor should the second element, that the speech is on a matter of public concern, be of any doubt.  The anti-SLAPP statute defines "matter of public concern" as "an issue related to (A) health or safety, (B) environmental, economic or community well-being, … [or] (D) a public official or public figure …."  Conn. Gen. Stat. § 52-196a(1).  The Sandy Hook shooting was "[t]he nation's second deadliest school shooting [.]"  *Hawker v. Sandy City Corp*., 774 F.3d 1243, 1244 n.3 (10th Cir. 2014).  The shooting "garnered national attention."  *City of Roseville v. Zisk*, No. C073496, 2015 Cal. App. Unpub. LEXIS 4193, at *14 (June 16, 2015).  In addition to shocking the nation, it spurred gun control legislation in at least New York and Connecticut as a direct consequence thereof.  *See N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015); *Peruta v. Freedom of Info. Comm'n*, No. HHBCV135015745S, 2013 Conn. Super. LEXIS 2572, at *11 (Super. Ct. Nov. 7, 2013); *Nat'l Shooting Sports Found., Inc. v. Malloy*, 986 F. Supp. 2d 118, 120 (D. Conn. 2013) (Hall, U.S.D.J.).  Audio tapes of the 911 calls were the subject of Freedom of Information Act litigation.  *See Sedensky v. Freedom of Info. Comm'n*, No. HHBCV136022849S, 2013 Conn. Super. LEXIS 2716, at *1 (Super. Ct. Nov. 26, 2013).  One court found there "is unquestionably a heightened public interest in" the materials that belonged to the shooter.  *Comm'r, Dep't of Emergency Servs. & Pub. Prot. v. Freedom of Info. Comm'n*, No. HHBCV156029797S, 2016 Conn. Super. LEXIS 786, at *1 (Super. Ct. Apr. 8, 2016).  Public litigation was filed by two families (not parties here) against the school district for wrongful death.  *See Lewis v. Newtown Bd. of Educ*., No. CV156075650S, 2018 Conn. Super. LEXIS 934 (Super. Ct. May 7, 2018).

One of the worst school shootings in history is unquestionably "an issue related to … health and safety." The fallout following the shooting constituted "an issue of … community well-being." And, as explained in Section 3.2, *infra*, Defendants' statements concerned public figures. Thus, the speech was on a matter of public concern.

The third element, lack of probable cause of prevailing, is discussed below as to each claim. For civil litigation, Connecticut defines probable cause as "a *bona fide* belief in the existence of the facts essential under the law . . . such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *J.K. Scanlan Co. v. Constr. Grp., Inc*., 80 Conn. App. 345, 350 (2003) (quotations omitted). As set forth below, there is no probable cause to support Plaintiffs' claims, and such claims are subject to dismissal under the Connecticut anti-SLAPP statute.

### 3.2     Defendants' Speech is Constitutionally Protected

Under the First Amendment, public officials and public figures must prove "actual malice" to recover for claims based on speech. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Gertz v. Robert Welch*, 418 U.S. 323 (1974). "For the purpose of determining the constitutional protection afforded a defendant's speech under the First Amendment to the United States Constitution, the court must first address whether the plaintiff is a public figure." *Zupnik v. Associated Press, Inc*., 31 F. Supp. 2d 70, 72 (D. Conn. 1998). Plaintiff Aldenberg, an FBI agent, is a public official. *See Price v. Viking Penguin, Inc*., 676 F. Supp. 1501, 1512 (D. Minn. 1988) ("First Amendment policy concerns behind the *New York Times* decision favor extending the concept of public official to include FBI agents when acting publicly in the course of their duties. The conduct of such agents in exerting their federal authority is a matter of legitimate public interest.") The remaining plaintiffs are public figures.

Plaintiffs, at a minimum, are involuntary public figures, ones who "become a public figure through no purposeful action of [their] own." *Gertz*, 418 U.S. at 345. In *Zupnik*, the Court found that family members and participants in high profile events can have "notoriety spilled over" and be drawn "into the public spotlight[,]" collecting cases in support thereof, to wit:

*Carson v. Allied News Company*, 529 F.2d 206, 210 (7th Cir. 1976) (Johnny Carson's wife a public figure); *Dameron v. Washington Magazine, Inc*., 250 U.S. App. D.C. 346, 779 F.2d 736, 741 (D.C. Cir. 1985) (Air Traffic Controller who was "an ordinary citizen … and never acquired any notoriety apart from the crash … [was raised] involuntarily, to the status of a limited purpose public figure"); *Meeropol v. Nizer*, 560 F.2d 1061, 1066 (2d Cir. 1977) cert. denied, 434 U.S. 1013, 54 L. Ed. 2d 756, 98 S. Ct. 727 (1978) ("In the course of extensive public debate revolving about the Rosenberg Trial [their children] were cast into the limelight and became public figures under the Gertz standards"); *Brewer v. Memphis Pub. Co., Inc.*, 626 F.2d 1238, 1257 (5th Cir. 1980) (The husband of a woman who once dated Elvis Presley was also a public figure.).

*Zupnik*, 31 F. Supp. 2d at 73. Plaintiffs similarly meet this standard. With the exception of Mr. Aldenberg, Plaintiffs' close family members were killed in a high-profile shooting. Mr. Aldenberg himself, in addition to being a public official, is akin to the air traffic controller in *Dameron*. Though they did not seek to be thrust into the spotlight, they are public figures, nonetheless.

Additionally, Plaintiff Lafferty is a limited purpose public figure. To be deemed a limited purpose public figure, a plaintiff must have: "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman*, 745 F.2d at 136-37. By publishing an op-ed in *USA Today*, addressed to President-elect Trump, she invited public attention to her views to influence others, voluntarily injecting herself into the controversy (the hoax debate), in prominent fashion. And she has maintained wide media access. *See, e.g.,* Erica Lafferty, "'My Mom Was Killed at Sandy Hook— And Now I Have to Watch Another School Shooting Unfold,'" WOMEN'S HEALTH (Feb. 16, 2016);[12] Erin Delmore, "How The Daughter Of Sandy Hook's Principal Is Taking On Trump, 140 Characters At A Time," BUSTLE (Oct. 5, 2017);[13] Erica Lafferty, "My Mom Was Killed in Sandy

---

[12]   Available at: <https://www.womenshealthmag.com/life/a18210605/erica-lafferty-florida-school-shooting-response/> (last accessed Jul. 20, 2018).

[13]   Available at: <https://www.bustle.com/p/how-the-daughter-of-sandy-hooks-principal-is-taking-on-trump-140-characters-at-a-time-2793051> (last accessed Jul. 20, 2018).

Hook. Now I'm Fighting to Prevent Gun Violence," InStyle (Feb. 16, 2018);[14] Erica Lafferty, "My Mother Died at Sandy Hook. Megyn Kelly Has 'Profited Off My Pain,'" Time (Jun. 14, 2017).[15] Thus, Ms. Lafferty is both an involuntary public figure and a limited-purpose public figure.[16]

Plaintiff did not plausibly allege actual malice necessary under the First Amendment. Public figures and officials "who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544. "Actual malice" in the context of the First Amendment does not include "spite, hostility or intention to harm." *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 10 (1970); *see also Garrison v. Louisiana*, 379 U.S. 64, 78-79 (1964) (reckless disregard not established by a finding of "ill-will, enmity, or a wanton desire to injure."). Actual malice only exists where a defendant has actual, subjective knowledge of falsity or an awareness of a strong likelihood the statement is false; "reckless conduct is not measured by whether a reasonably prudent man would have published, or

---

[14] Available at: <https://www.instyle.com/news/gun-violence-erica-lafferty> (last accessed Jul. 20, 2018).

[15] Available at: <http://time.com/4816317/sandy-hook-victim-outraged-megyn-kelly-alex-jones/> (last accessed Jul. 20, 2018).

[16] Other plaintiffs also appear to be limited purpose public figures as well, having taken prominent, public roles after the shooting. *See, e.g.*, Oprah Winfrey, "'He Has Become Our Light': Oprah Talks to the Wheelers," Oprah.com (2013), available at: <http://www.oprah.com/spirit/oprah-talks-to-francine-and-david-wheeler-sandy-hook-parents> (last accessed Jul. 20, 2018) (Oprah Winfrey interview with David & Francine Wheeler); Sarah Childress, "Jackie and Mark Barden, Parents of Newtown Victim: Daniel Was 'A Kind Little Soul,'" PBS (Feb. 19, 2013), available at: <https://www.pbs.org/wgbh/frontline/article/jackie-and-mark-barden-parents-of-newtown-victim-daniel-was-a-kind-little-soul/> (last accessed Jul. 20, 2018) (PBS interview with Jacqueline and Mark Barden); Philip Sherwell, "Sandy Hook school shooting: British victim's grieving family fight for their son's legacy," The Telegraph (Dec. 13, 2014), available at: <https://www.telegraph.co.uk/news/worldnews/northamerica/usa/11291893/Sandy-Hook-school-shooting-British-victims-grieving-family-fight-for-their-sons-legacy.html> (last accessed Jul. 20, 2018) (Nicole & Ian Hockley); Nanci G. Hutson, "Sandy Hook parent: 'We fell off a cliff without a safety net,'" The Connecticut Post (Nov. 15, 2014), available at: <https://www.ctpost.com/local/article/Sandy-Hook-parent-We-fell-off-a-cliff-without-a-5894867.php> (last accessed Jul. 20, 2018) (Jennifer Hensel & Jeremy Richman); Christine Roberts, "Iconic photo of woman's anguish before learning her sister died in the Newtown massacre is a reminder that 'kills,' Carlee Soto says," New York Daily News (Dec. 18, 2012), available at: <http://www.nydailynews.com/news/national/photo-reaction-kills-sister-teacher-killed-newtown-article-1.1223033> (last accessed Jul. 20, 2018) (Donna Soto & Carlee Soto-Parisi); Edith Honan, "Newtown victim's sister turns gun control 'accidental activist,'" Reuters (Jun. 14, 2013), available at: <https://www.reuters.com/article/us-usa-shooting-newtown-soto/newtown-victims-sister-turns-gun-control-accidental-activist-idUSBRE95D06N20130614> (last accessed Jul. 20, 2018) (Jillian Soto); Joseph Wenzel IV, "Family, friends remember Victoria Soto," WFSB (2013), available at: <http://www.wfsb.com/story/24174421/family-friends-remember-victoria-soto> (last accessed Jul. 20, 2018) (Carlos Soto).

would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Finally, a defamation plaintiff must establish actual malice by clear and convincing evidence. *See Bose Corp. v. Consumers Union, Inc.*, 466 U.S. 485, 511 (1984); *see also Celle v. Filipino Reporters Enters.*, 209 F.3d 163, 183 (2d Cir. 2000).

Actual malice must be plausibly alleged under Fed. R. Civ. P. 8. *Harasz v. Katz*, 239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) (citing *Biro, supra*). Plaintiffs made a single, *pro forma,* conclusory allegation that "[t]he defendants had knowledge that their statements were lies, or acted with reckless disregard as to the falsity of their statements," without any connection to the facts. These mere "'naked assertions' or 'conclusory statements' are not enough." *Biro*, 807 F.3d at 544 (quoting *Iqbal*, 556 U.S. 662). Nothing in the Complaint asserts nonconclusory knowledge of falsity or reckless disregard. To the contrary, the Complaint is replete with references to the factual basis for the hoax theory. *See, e.g.,* Dkt. No. 1-1 at ¶¶ 102-105 (victim's father asking "read the card," seemingly reading scripted remarks); ¶¶ 106-107 (FAU Communications Professor discussing motives of interviewees); ¶ 137 (Statement by Mayor Bloomberg before the shooting); ¶ 147 (FBI Crime Statistics omission of homicides in Newtown); ¶ 168 (molded physical appearance of the school); ¶ 181 (photographic resemblance of one victim to a victim of an unrelated event); ¶ 195 (absence of expected response personnel); ¶ 198 (Connecticut police casually eating lunch inside school); ¶ 221 (sealed nature of records); ¶ 222 (reporting by Anderson Cooper seeming to have used a green-screen); ¶ 269 (demeanor of police); ¶ 270 (immediacy of portable toilets on scene for media); and ¶ 271 (lack of clear photos of victims). The Plaintiffs do not allege Defendants knew these facts to be false or recklessly disregarded their falsity in relying on them to assess whether the shooting happened; in fact, they do not dispute them at all. Thus, there is no plausible allegation of actual malice. *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018) (granting Rule 12(b)(6) motion because "[t]he Complaint's allegations regarding the element of actual malice are conclusory and provide no detail as to each Defendants' knowledge or mental state").

- 12 -

### 3.3 The Speech is Protected as Fair Comment

In Connecticut, the "fair comment" privilege is a "qualified privilege to express an opinion or otherwise comment on matters of public interest." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 114 (1982). It has generally been deemed "elevated to constitutional status" and governed by *New York Times* and its progeny. *Id.* at 115. "Under any circumstances that would give rise to a conditional privilege for the publication of defamation, there is likewise a conditional privilege for the invasion of privacy." Restatement (Second) of Torts § 652G (Am. Law Inst. 1977); *see also Dellacamera v. New Haven Register*, No. CV000436560, 2002 Conn. Super. LEXIS 3403, at *13 (Conn. Super. Ct. Oct. 28, 2002) (citing Restatement (Second) of Torts § 652G) ("[P]rivileges applicable to defamation claim, such as fair report privilege, also apply to false light claim.").

As noted by the Second Circuit, "[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977). Under the privilege, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection. Expressions of 'mixed' opinion, however, are privileged only where made (1) by members of the press or news media; (2) about matters of public interest or concern; and (3) without knowingly or recklessly distorting the facts upon which they are based." *Id.* at 118-119. Defendants are media members.[17] *See* Dkt. No. 1-1 at ¶¶ 40 & 93. As discussed above, the Sandy Hook shooting is a matter of public interest and concern. And, to the extent Mr. Jones concluded at one point that the shooting was a hoax, it was based on the factual bases described above, none of which were knowingly or recklessly distorted.

The business entity defendants similarly enjoy the privilege. *See Charles Parker Co. v. Silver City Crystal Co.*, 142 Conn. 605, 619 (1955) ("Unless it could be shown that that defendant company maliciously permitted its facilities to be used, or that it knew that the facts stated were

---

[17]   Under the First Amendment, "a distinction drawn according to whether the defendant is a member of the media or not is untenable." *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000).

false and yet allowed the broadcast, or otherwise acted in bad faith, it too is shielded by the privilege."). There is no malice. There is no knowledge of falsehood. There is no bad faith. Thus, the claims are all barred by the fair comment privilege.

### 3.4    Most of the Allegations are Time-Barred

The bulk of the allegations are not timely. "In Connecticut, an action is commenced on the date of service of the writ upon the defendant…." *McGaffin v. Roberts*, 193 Conn. 393, 401-402 n.9 (1984), cert. denied, 470 U.S. 1050 (1985) (citations omitted). All of the common law claims are governed by a two-year statute of limitations. *See* Conn. Gen. Stat. §§ 52-577, 52-584, & 52-597. The Connecticut Unfair Trade Practices Act has a three-year statute of limitations. Conn. Gen. Stat. § 42-110g(f).

Although Plaintiffs purportedly served Mr. Jones on June 13, 2018, such service was invalid. None of the means of service under Fed. R. Civ. P. 4(e) were met. According to the returns of service, he was served by copy to the Connecticut Secretary of State, who is not an agent of service, and by affixation to a house that is not his usual place of abode. Neither is such service authorized under Texas Rule 106. Similarly, the limited liability companies are not registered to do business in Connecticut, nor did they transact business in Connecticut, rendering service on the Secretary of State invalid. *See* Fed. R. Civ. P. 4(h)(1)(B); Conn. Gen. Stat. § 34-275a.

Each alleged act of defamation was a distinct event, giving rise to a separate cause of action. *See Time Was Garage, LLC v. Giant Steps, Inc.*, No. LLICV106002895S, 2013 Conn. Super. LEXIS 2957, at *25 (Super. Ct. Dec. 20, 2013). Nor is there some special relationship between the parties that would warrant application of the "continuing course of conduct" doctrine for the defamation claim. Similarly, the doctrine does not apply to false light invasion of privacy claims. *See Brady v. Bickford*, No. KNLCV116007541, 2015 Conn. Super. LEXIS 585, at *23-24 (Super. Ct. Mar. 13, 2015).

Defendants acknowledge that the CUTPA claim and the emotional distress claims could be subject to the doctrine. *See Izzarelli v. R.J. Reynolds Tobacco Co.*, 117 F. Supp. 2d 167, 177 (D. Conn. 2000) (CUTPA); *Watts v. Chittenden*, 301 Conn. 575, 596 (2011) (intentional infliction

of emotional distress); *Brady*, 2015 Conn. Super. LEXIS 585, at \*14-15 (citing cases suggesting it may apply to negligent infliction claims).  "To support a finding of a 'continuing course of conduct' that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto.  That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong."  *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 209 (1988).  However, there is no "special relationship," supporting a claim of breach of duty, between Plaintiffs and Defendants that would make the doctrine applicable for the CUTPA or negligent infliction claims.  *Sinotte v. City of Waterbury*, 121 Conn. App. 420, 440-41 (2010).  The only instance where the special relationship/ duty requirement has been abrogated is for intentional infliction claims.  *See Watts v. Chittenden*, 301 Conn. 575 (2011).  Thus, for purposes of the common law claims, excepting the intentional inflict claim, only actions after July 20, 2016 and for the statutory claim, July 20, 2015, may be generally considered, at the earliest.

### 3.5     None of the Claims are Plausible

Not only are the alleged statements constitutionally infirm and subject to the fair comment privilege, they are implausible.  Nothing in the Complaint could plausibly give rise to liability and they are subject to dismissal outright.

#### 3.5.1     Defendants are Not Liable for False Light Invasion of Privacy

Plaintiffs were not put in a false light.  "The definition of false light invasion of privacy is as follows:  One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at \*27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003).  Plaintiffs do not meet these elements.

First, Plaintiffs were not placed before the public by Mr. Jones.  "Under the group libel doctrine, a plaintiff's claim is insufficient if the allegedly defamatory statement referenced the plaintiff solely as a member of a group, unless the plaintiff can show that the circumstances of the publication reasonably give rise to the conclusion that there is a particular reference to the plaintiff." *Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009) (citing *Algarin v. Town of Wallkill*, 421 F. 3d 137, 139 (2d Cir. 2005).  The standard for "group libel" may also be considered in evaluating a group false light claim.  *See, e.g.*, *Degroat v. Cooper*, 2014 U.S. Dist. LEXIS 66089, at *15-16 (D.N.J. May 14, 2014).  With the exception of Ms. Lafferty in one instance, none of the plaintiffs were identified by name.  Twenty-six people were killed by Adam Lanza.  They each had a multitude of family members, of whom the plaintiffs are a small subset. There were approximately 325 first responders, of whom Mr. Aldenberg was only one.  *See* Mark Zaretsky, "Connecticut officials honor Sandy Hook responders," NEW HAVEN REGISTER (Jul. 8, 2014).[18]  Nothing about the statements would reasonably give rise to the conclusion that the statements were particularly referring to them.

Second, Defendants did not have knowledge of or act in reckless disregard as to the alleged falsity of the publicized matter.  This is the same actual malice standard discussed generally above. *See Cowras v. Hard Copy*, No. 3:95cv99 (AHN), 1997 U.S. Dist. LEXIS 23514, at *43-44 (D. Conn. Sep. 29, 1997).  If "[t]here is nothing false about th[e] statement" at issue, then there can be "no claim of false light."  *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 216-17 (D. Conn. 2010) ("[T]he Connecticut courts have only recognized a false light claim where the defendant has published a falsehood."); *Machleder v. Diaz*, 801 F.2d 46, 53 (2d Cir. 1986) ("[T]ruth … is a complete defense to a false light invasion of privacy cause of action"); *Goodrich*, 188 Conn. at 131-32 (1982) (when "the published statements concerning … [plaintiff's] affairs [a]re true," any "claim for a false light invasion of privacy" is defeated).  "As long as the matter published is substantially true, [a] defendant [i]s constitutionally protected from liability for a false light

---

[18]    Available at:  <https://www.nhregister.com/connecticut/article/Connecticut-officials-honor-Sandy-Hook-responders-11371762.php> (last accessed Jul. 20, 2018).

invasion of privacy[.]"  *Id.* at 113, 132 (substantially true means that "the main charge, or gist" of the allegedly defamatory statement is true) (emphasis added).  As set forth above, the Complaint is replete with the factual bases for the hoax theory.  Plaintiffs do not deny those particular facts.  Thus, Defendants' factual statements are substantially true and it cannot be shown that they otherwise acted with knowledge of falsity or in reckless disregard thereof.

Third, calling the shooting "fake" or a "hoax" is a matter of opinion.  "[T]he essence of a claim for invasion of privacy by way of false light depends upon the falsity of the statement, a clear expression of an opinion which is neither objectively true or untrue—is insufficient to support such a cause of action."  *Berry v. Ronald*, No. FBTCV175032673, 2018 Conn. Super. LEXIS 324, at *9 (Super. Ct. Feb. 20, 2018).  As noted by the First Circuit Court of Appeals, as to the words "fake" and "phony," those "adjectives admit of numerous interpretations," meaning they are "unprovable" and are not actionable opinion.  *Phantom Touring, Inc. v. Affiliated Publ'ns*, 953 F.2d 724, 728 (1st Cir. 1992); *see also Pan Am Sys. v. Atl. Ne. Rails & Ports, Inc.*, 804 F.3d 59, 65 n.2 (1st Cir. 2015).  Similarly, as to hoaxes, "[a] person's opinion concerning which events rank among the greatest hoaxes in American history is a quintessential example of a subjective opinion.  There is simply no method to objectively verify where an event ranks among the greatest hoaxes in American history—or whether a particular event even makes the list."  *Montgomery v. Risen*, 197 F. Supp. 3d 219, 249 (D.D.C. 2016).[19]

Defendants set forth the factual bases for the opinions, rendering them protected.  *See Dow v. New Haven Indep., Inc.*, 41 Conn. Supp. Ct. 31, 38 (1987) (when "the defendant states the fact upon which he or she bases the opinion" their "statements clearly fall within the protection of the first amendment"); *Colon v. Town of W. Hartford*, No. 3:00CV168(AHN), 2001 U.S. Dist. LEXIS 484, at *16 (D. Conn. Jan. 5, 2001) (opinion was privileged where writer "disclose[d] the factual basis for her opinion").  Thus, there is no plausible claim for false light invasion of privacy.

---

[19]    As to Ms. Lafferty, as discussed above, Mr. Shroyer accurately reflected that she called upon President Trump to suffer a personal tragedy.  As to disputing whether Mr. Jones had called the shooting fake or a hoax, she does not allege that Mr. Shroyer knew that, two years prior, he had used such terminology or recklessly disregarded it.

### 3.5.2   Defendants are Not Liable for Defamation *Per Quod* or *Per Se*

Defendants did not defame Plaintiffs.  Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement."  *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009).

First, Plaintiffs cannot recover under the group libel doctrine.  *See Abramson v. Pataki*, 278 F.3d 93, 102-03 (2d Cir. 2002) (finding individual Javits Center workers could not bring claims where there were repeated references to corruption among them).  The statements were not "of and concerning" Plaintiffs.  Under Connecticut law,

> [t]o establish a prima facie case of defamation, a plaintiff must allege a defamatory statement that identifies the plaintiff to a third party.  Where the defamatory statement is not made about the plaintiff, the defamation claim must fail.  Indeed, the Connecticut Supreme Court has observed that proving that a defamatory statement was made "of and concerning" the plaintiff is a constitutional prerequisite to recovery for defamation.  Although a defamatory statement may be "of and concerning" the plaintiff even though on its face it refers to another person, more is required than a mere pleading of defamation by association; rather, a reasonable recipient must understand that the defamatory statement is "in substance, actually about" the third party.

*Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 U.S. Dist. LEXIS 140132, at *49-50 (D. Conn. Sep. 30, 2014) (internal citations omitted).  At best, Plaintiffs plead defamation by association; recipients would not understand it to be about them, by name.  With the exception of Ms. Lafferty, none of the plaintiffs were specifically referenced, and she was only referenced a single time, without general relation to the "fake" or "hoax" claim.

Second, for a statement to be defamatory, it must be false.  *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014).  Moreover, a "defendant will not be held liable as long as the statements at issue are substantially true." *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554 (Conn. 1994).  Thus, "[w]here the

main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124, 2014 WL 902675, at \*4-5 (D. Conn. March 7, 2014) (internal quotation marks and citations omitted).  These statements are all either substantially true or non-factual statements. "For a statement to be defamatory, it must be one of fact, rather than one of opinion." *Devone*, 2014 U.S. Dist. LEXIS at \*24; *Indiaweekly.com, LLC v. Nehaflix.com, Inc*., 596 F.Supp.2d 497, 503 (D. Conn. 2009) (under Connecticut common law, "a defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion").  "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known….  An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich*, 188 Conn. at 111 (internal citations and quotation marks omitted).  Generally, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Id*. at 118.  Put simply, "[a]n assertion that cannot be proved false cannot be held libellous [sic]." *Hotchner*, 551 F.2d at 913.  As discussed above, the matters such as the cue card, Anderson Cooper's appearance, etc., are not denied.  Thus, the factual portions of the statements are substantially true.

The conclusions of it being "fake" and a "hoax" are statements of protected opinion. "An author is constitutionally permitted to use exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and figurative expressions to embellish disclosed facts." *Colon*, 2001 U.S. Dist. LEXIS 484, at \*15 (citing *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20 (1990)).  Not infrequently, "courts have found that use of the word 'fraud' can be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015) (collecting cases); *see also Friedman v. Boston Broadcasters, Inc.*, 402 Mass. 376, 379-80, 522 N.E.2d 959 (1988) (characterizing plaintiffs as "insurance crooks," who engaged in "insurance fraud" constitutes a statement of opinion and not fact); *Dong v. Board of Trustees of Leland Stanford University*, 191 Cal. App. 3d 1572, 1585-1586, 236 Cal. Rptr. 912

(1987) (letter stating that plaintiff had engaged in "public fraud" was a statement of opinion based on disclosed facts).  Similarly, as discussed above, courts have also deemed calling something "fake" or a "hoax" as opinion.

Neither were Plaintiffs defamed by implication.  "Connecticut has not recognized defamation by implication."  *Estate of Gomez v. Larson*, CV 980084646, 1999 Conn. Super. LEXIS 1535, at *16 (Super. Ct. June 8, 1999).  As to defamation by innuendo, "[i]n the absence of [] undisclosed facts, first amendment considerations dictate that an article concerning a public figure composed of true or substantially true statements is not defamatory regardless of the tone or innuendo evident."  *Strada v. Conn. Newspapers, Inc.*, 193 Conn. 313, 323 (1984).  Here, Defendants disclosed the factual bases for their opinions, which Plaintiffs set forth in detail in the Complaint.

Further, Mr. Jones and the Infowars Defendants are only liable for their own statements, not those of Mr. Halbig or Mr. Shroyer.  As discussed below, there was no conspiracy.  A defendant transmitting defamatory material from a third party is not liable unless the defendant can be "shown to have had 'a high degree of awareness of the statement's probable falsity' or to have 'in fact entertained serious doubts as to the truth of his publication.'"  *Lerman*, 745 F.2d at 139, cert. denied, 471 U.S. 1054 (1985) (quoting *Garrison*, 379 U.S. at 74).  Plaintiffs do not and cannot assert an awareness of falsity or doubt at the time of transmission.  Thus, there is no actionable defamation.

Third, Plaintiffs fail to allege recoverable damages.  In a defamation claim, Plaintiffs must allege and prove special damages.  *See Yavis v. Sullivan*, 137 Conn. 253, 259 (1950).  Special damages "must be of a material and, generally, of a pecuniary nature.  It must result from the conduct of a person other than the defamer or the defamed, and that conduct must be directly caused by the publication of the slander."  *Urban v. Hartford Gas Co.*, 139 Conn. 301, 308 (1952).  Plaintiffs do not allege material or pecuniary losses, such as the loss of a job prospect, as a result of the statements.  Thus, the claim for defamation *per quod* fails.

Neither are the claims for defamation *per se* tenable. "In limited circumstances, a plaintiff may be able to argue that she was per se defamed, thus obviating the need to establish the fourth element of reputational harm." *Telkamp v. Vitas Healthcare Corp. Atl.*, No. 3:15-CV-726 (JCH), 2016 U.S. Dist. LEXIS 25232, at *34-35 (D. Conn. Feb. 29, 2016) (Hall, U.S.D.J.). The essential difference between claims of defamation and defamation per se is that, "[a]s to the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005). "In general, there are two classes of libel that are actionable per se: (1) libels charging crimes and (2) libels which injure a man in his profession and calling." *Id.* Here, Plaintiffs merely claim that the statements "implicate the Plaintiffs in heinous criminal conduct." Complaint at ¶ 350. No actual crime is identified and there is no allegation Defendants asserted they committed a crime rather than merely being "implicate[d]." Thus, there is no *per se* claim for defamation.

### 3.5.3   Defendants are Not Liable for Intentional Infliction of Emotional Distress

The torts of intentional and negligent infliction of emotional distress can "not be used to circumvent the established and carefully balanced framework of constitutional and state libel law." *Chaiken v. W Publishing Corp.*, 907 F. Supp. 689, 699 (S.D.N.Y. 1995), aff'd, 119 F.3d 1018 (1997). Thus, just as Defendants' speech is protected under the First Amendment from claims of libel, it is also protected from emotional distress claims based on the same protected speech.

As to the elements, Defendants are not liable for intentional infliction of emotional distress. To recover, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind."

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted).  These elements are not met.

First, nothing in the factual background suggests Defendants had any intention to harm Plaintiffs or had reason to foresee their words would cause harm.  They were discussing a matter of public concern, generally without reference to any named person who had some relationship to a victim.

Second, Defendants' speech was not extreme and outrageous.  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!"  *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 569-70, cert. denied, 284 Conn. 910 (2007) (internal quotation marks omitted.).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."  *Appleton v. Bd. of Educ.*, 254 Conn. 205, 211 (2000).  Similarly, "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."  *Davis v. Davis*, 112 Conn. App. 56, 67 (2009), quoting 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965).

Plaintiffs fail to set forth what, exactly, they claim was extreme and outrageous.  *See Avery v. City of W. Haven*, 3:99-CV-00013 (EBB), 2001 U.S. Dist. LEXIS 24394, at *20-21 (D. Conn. Feb. 1, 2001) (dismissing claim that "merely allege[d] Defendants' conduct was extreme and outrageous — a legal conclusion.")  Even with the most charitable construction of the claims, publicly calling someone a liar does not reach that high standard.  *See Roberts v. Kelley*, CV 980418904, 1999 Conn. Super. LEXIS 908, at *4-5 (Super. Ct. Apr. 8, 1999).  One court summarized a series of cases in which extreme and outrageous conduct was **not** found:

*Schmidt v. Housing Authority of the City of Bristol*, Superior Court, judicial district of New Britain, Docket No. 06 5001979, 2007 Conn. Super. LEXIS 2617 (October 4, 2007, Shapiro, J.) (motion to strike granted where defendants made false and misleading statements that the plaintiff violated a drug-free workplace policy; intentionally hired a known drug user; engaged in a conspiracy to hide drug usage by using a masking agent to foil drug testing; repeatedly republished the same untrue and misleading representations; spread rumors and innuendos about her; and caused the plaintiff to be terminated from her employment; withheld and hid information from her, created pretexts for investigation and terminating her, and demanded that she report to work while she was disabled and on approved leave). *See also Crane v. Northwestern CT Young Mens Christian Assoc.*, No. CV 04 4001019 Superior Court, judicial district of Litchfield at Litchfield, 2005 Conn. Super. LEXIS 1614 (Bozzuto, J., 2005) (defendants spoke and/or published defamatory statements about plaintiff's capabilities as a swim coach, and maliciously contacted plaintiff's other employer); *Langer v. Mail Delivery & Courier Services, Inc.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 05 4008535, 2006 Conn. Super. LEXIS 336 (Hiller, J., 2006) (defendants made statements in front of plaintiff's daughter that plaintiff was a thief and a liar, and that customers smelled alcohol on his breath, that customers hated him, and that he was a useless cheat, loafer and common drunkard, these statements were insufficient to support a claim of intentional infliction of emotional distress).

*Burke v. State*, No. MMXCV065000409S, 2010 Conn. Super. LEXIS 282, at \*14-16 (Super. Ct. Feb. 2, 2010). As those cases could not meet the high burden of showing extreme and outrageous conduct, neither do Plaintiffs.

Nor do Plaintiffs properly plead the element of severe emotional distress. They only make conclusory allegations that they suffered "emotional distress" that was "severe" caused by Defendants. Complaint at ¶¶ 363, 364 & 367. This is insufficient as a matter of law. *See Avery*, *supra* ("Nor do Plaintiffs allege how, and in what manner they all suffer from mental distress of a very serious kind.") As a result, the intentional infliction of emotional distress claim cannot proceed.

### 3.5.4   Defendants are Not Liable for Negligent Infliction of Emotional Distress

The First Amendment, as stated above, protects Defendants from claims of negligent infliction of emotional distress. Assuming, *arguendo*, such claims survive constitutional scrutiny, the elements of the claim are not met.

The elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional

distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress.

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.).  Nothing in the Complaint could warrant a finding of liability.

As with intentional infliction, Plaintiffs make insufficient, conclusory allegations as to their harm, with a *pro forma* recitation that they suffered emotional distress, caused by Defendants, "severe enough that it might result in illness or bodily harm."  Complaint at ¶¶ 375-378.  The Complaint is devoid of detail as to their alleged distress, illness, or physical harms suffered.

Neither was that harm foreseeable.  "The foreseeability requirement in a negligent infliction of emotional distress claim is more specific than the standard negligence requirement that an actor should have foreseen that his tortious conduct was likely to cause harm….  In order to state a claim for negligent infliction of emotional distress, the plaintiff must plead that the actor should have foreseen that her behavior would likely cause harm of a specific nature, i.e., emotional distress likely to lead to illness or bodily harm."  *Olson v. Bristol-Burlington Health District*, 87 Conn. App. 1, 5, cert. granted on other grounds, 273 Conn. 914 (2005) (appeal withdrawn May 25, 2005) (citation omitted).  "In negligent infliction of emotional distress claims, unlike general negligence claims, the foreseeability of the precise nature of the harm to be anticipated [is] a prerequisite to recovery even where a breach of duty might otherwise be found.…"  *Perodeau v. Hartford*, 259 Conn. 729, 754 (2002) (emphasis added; internal quotation marks omitted).

The speech at issue was all of a matter of public concern, to a general audience, not specifically targeting Plaintiffs.  Even as to Ms. Lafferty, the statement by Mr. Shroyer would be a reasonably anticipated rebuttal of her *USA Today* op-ed, a public position that would invite a response.  Engaging her on that issue did not represent an "unreasonable risk" and it was not foreseeable that she, or any other plaintiff, would suffer illness or bodily harm as a result of a general discussion of the circumstances of the shooting and the conclusions drawn therefrom.  Thus, the claim must be dismissed.

### 3.5.5   Plaintiffs' Conspiracy Claims Lack Merit

Counts One through Four of the Complaint all allege civil conspiracy as part of the underlying tort, pleading for each:

- The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

- The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383.  Plaintiffs also make general allegations that the defendants "acted together to develop, disseminate, and propagate" the allegedly false statements.  *Id.* at ¶¶ 84-85.  These naked allegations are insufficient.

Under Connecticut law, "there is no independent claim of civil conspiracy.  Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself.  Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted).  A conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." *Id.* at 781.  As a result, a plaintiff must "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.*, No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011).

First, as discussed above, there are no substantive torts alleged that survive scrutiny.  There is no plausible allegation Defendants entered into any agreement or had a particular purpose or end to harm Plaintiffs.  As to Mr. Sklanka, no actual role in the website or broadcasts is alleged as harming Plaintiffs.  Merely driving and filming Mr. Halbig in some unspecified manner does not state a conspiracy, especially where the sole allegation of semi-specific conduct by Mr. Sklanka

does not mention Plaintiffs at all. Complaint at ¶ 60. None of the other allegations as to Mr. Halbig, for whom Mr. Sklanka allegedly worked, for May 13, 2014, September 25, 2014, December 12, 2014, March 4, 2015, May 28, 2015, and May 29, 2015, even mention Mr. Sklanka. *Id*. at ¶¶ 129–170 & 189–219. In fact, the June 2, 2015 alleged incident appears nowhere in the so-called "Campaign of Abuse." *Id*. at ¶¶ 101–end.

Similarly, as to Mr. Halbig, there is no basis to suggest Mr. Jones or the Infowars Defendants made any agreement—the only nonconclusory factual allegation is that Mr. Halbig was a repeat guest. Sens. John McCain and Robert Dole and Vice President Joseph Biden each appeared on NBC News's *Meet the Press* dozens of times; it would be ludicrous to suggest there is any combination among them on that basis. *See* Linda Qiu, "John McCain says he holds the record for 'Meet the Press' appearances," POLITIFACT (Aug. 27, 2014).[20] There is no cognizable conspiracy claim for any of the four common law claims.

### 3.5.6   Defendants are Not Liable Under CUTPA

In their fifth cause of action, Plaintiffs allege that Defendants' speech is in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-11a, *et seq*. Plaintiffs' CUTPA claim is insufficiently pled, and impermissibly made up of mere conclusions and a formulaic recitation of the elements of a cause of actions. *Twombly*, 550 U.S. at 555.

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce, 'and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy.'" *Eder Bros. v. Wine Merchants. Of Conn., Inc.* 275 Conn. 363, 380 (Conn. 2005) quoting *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn 243, 257 (1988). Plaintiffs' allegations do not amount to a CUTPA violation.

The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common

---

[20]   Available at: <http://www.politifact.com/truth-o-meter/statements/2014/aug/27/john-mccain/john-mccain-says-he-holds-record-meet-press-appear/> (last accessed Jul. 20, 2018).

law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010). None of the factors are met.

First, as set forth above, there is no cognizable common law claim. Plaintiffs do not allege any other violation of an established concept of unfairness. First Amendment protected activity cannot give rise to a CUTPA violation. "The Second Circuit has concluded that CUTPA and Connecticut common law claims must be interpreted—and would be interpreted by Connecticut state courts—so as to avoid 'serious constitutional problems.'" *Weldon v. MTAG Servs., LLC*, No. 3:16-cv-783 (JCH), 2017 U.S. Dist. LEXIS 27660, at *37 (D. Conn. Feb. 28, 2017) (Hall, U.S.D.J.), quoting *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 102 (2d Cir. 1983).

Second, there is no immoral, unethical, oppressive, or unscrupulous conduct. The basis of the claim is that Defendants allegedly spread lies for profit. Complaint at ¶¶ 386-387. But the Supreme Court specifically refrained from declaring "false speech" as an unprotected category of speech. *See United States v. Alvarez*, 567 U.S. 709, 721-22 (2012) (plurality); *see also Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) (relying upon *Alvarez* plurality). Again, Plaintiffs' theory runs afoul of the First Amendment.

Third, an essential criterion for determining whether a practice violates CUTPA is whether it causes substantial injury to consumers, competitors, or other businessmen. *See McLaughlin Ford, Inc. v. Ford Motor Co*., 192 Conn. 558, 568 (1984). Plaintiffs are not consumers, competitors, or related businessmen, and the CUTPA claim is ripe for dismissal as to all Defendants.

### 3.5.7   Defendants are Not Agents of Each Other and the Complaint Insufficiently Pleads Specific Liability

Plaintiffs generally plead that Defendants were "servants, agents, apparent agents, employees, and/or joint venturers" of each other. Dkt. No. 1-1 at ¶¶ 86-88. There are no factual

allegations in the Complaint to plausibly suggest Mr. Halbig or Mr. Sklanka were servants, agents, apparent agents, employees, and/or joint venturers of Mr. Jones or the Infowars Defendants.

There is no master/servant, agency, or employment relationship.  The "right to control" test is dispositive of all three categories, and asks whether the "putative employer [or master or principal] has the right to control the means and methods used by the [employee, servant, or agent] in the performance of his or her job." *Doe v. Yale Univ.*, 252 Conn. 641, 680-81 (2000).  There is no plausible allegation Mr. Jones or the Infowars Defendants had the right to control Mr. Halbig or Mr. Sklanka, or vice-versa.

There was no apparent agency.  "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." *Lewis v. Michigan Millers Mutual Ins. Co*., 154 Conn. 660, 665 (1967); *TD Props., LLC v. VP Bldgs., Inc*., 602 F. Supp. 2d 351, 360 n.7 (D. Conn. 2009).  To establish apparent agency, "First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly, permitted the agent to act as having such authority.  Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." *Tomlinson v. Bd. of Educ*., 226 Conn. 704, 734-35 (1993) (internal citations and quotation marks omitted).  Neither Mr. Halbig nor Mr. Sklanka were held out as having authority from Mr. Jones or the Infowars Defendants, nor was there any reasonable reliance thereon.

There is no joint venture.  "A joint venture is a special combination of two or more persons who combine their property, money, effects, skill, and knowledge to seek a profit jointly in a single business enterprise without any actual partnership or corporate designation.  The relationship between contracting parties cannot amount to a joint venture unless the parties so intend." *Elec. Assocs., Inc. v. Automatic Equip. Dev. Corp*., 185 Conn. 31, 35 (1981) (internal citations omitted). There is no plausible business enterprise, nor is there a factual basis to suggest Defendants intended to enter into a joint venture.

In the absence of such relationships, there is insufficient pleading as to each purported Defendant's liability. Throughout the Complaint, Plaintiffs lump Mr. Jones and the Infowars Defendants together, without specifically alleging who did what, and when. "[I]t is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (internal citation and quotation marks omitted). Courts in this Circuit and elsewhere have repeatedly and regularly dismissed claims where the complaints haphazardly lump defendants together. *See Haskins v. Zimmer Holdings, Inc*., No. 1:09-CV-236, 2010 U.S. Dist. LEXIS 7690, 2010 WL 342 (D. Vt. Jan. 29, 2010); *Hendrikx v. State*, No. 2:13-cv-0087-RJS, 2013 U.S. Dist. LEXIS 155217, at *6 (D. Utah Oct. 29, 2013) (finding Rule 8(a) standard not met where "[t]he Complaint wholly fails to give the Defendants adequate notice of the misconduct each is alleged to have committed."); *Combs v. Stryker Corp*., No. 2:09-cv-02018-JAM-GGH, 2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009); *Timmons v. Linvatec Corp*., 263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010); *Adams v. I-Flow Corp*., Case No. CV09-09550 R (SSx), 2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010); *Peterson v. Breg, Inc*., 2:09-cv-2044 JWS, 2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010). Although the Complaint does specify what individual speakers said, it does not specify how or why each other Defendant may be liable for that speech beyond asserting implausible conspiracy or agency relationships. Plaintiffs' lumping together of Defendants fails to meet the Rule 8(a) pleading standard.

Similarly, even if one of the Infowars Defendants might be liable for something said by someone other than Mr. Jones, he would not share that liability, nor would the other individual companies. The Restatement (Third) of Agency provides that a principal may be liable for the acts of the agent, but not vice-versa. *See* Restatement (Third) of Agency § 7.03 (2006); *see also* Restatement (Third) of Agency § 7.03 cmt. b (2006) (confirming that "[p]rincipals, not agents, are subject to vicarious liability"). Thus, it was incumbent on Plaintiffs to specifically plead the factual

predicate for each Defendant's alleged liability, which it failed to do, rather than lumping them together.

The speculative and collective identification of the Defendants fails to adequately identify which Defendant caused each Plaintiff's alleged injury. *See Kester v. Zimmer Holdings, Inc*., No. 2:10-cv-00523, 2010 U.S. Dist. LEXIS 59869, at *17 (W.D. Pa. June 16, 2010) (dismissing product liability claim where "the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury and the Complaint, therefore, is insufficient and speculative under *Twombly* and *Iqbal*"); *Haskins*, 2010 U.S. Dist. LEXIS 7690, at *5 (dismissing product liability claim because the "threshold allegation" of pleading what a specific defendant did by name "is necessary to show a plausible entitlement to relief.").

A plaintiff's generic averments and formulaic recitations that do not disambiguate defendants fail under the federal pleading standard. *See Sherman v. Stryker Corp*., No SAVC 09-224 JVS (ANx), 2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009); *Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM, 2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009); *Gilmore v. DJO, Inc*., 663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009). Relying on *Twombly* and *Iqbal*, district courts dismiss complaints that "conspicuously fail[] to allege" what specific conduct a defendant engaged in that caused the alleged injury." *Sherman*, 2009 U.S. Dist. LEXIS 34105, at *12; *see also Dittman*, 2009 U.S. Dist. LEXIS 97106, *8-9 (noting, in the products liability context, that plaintiff's failure to sufficiently allege any of the defendants' product was used on plaintiff was a "deficiency fatal to the claim" since plaintiff "had no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury").

Plaintiffs failed to plead specific allegations of wrongdoing as to each defendant. Rather, they collectively plead while merely speculating that all Defendants could be liable. *Compare Combs*, 2009 U.S. Dist. LEXIS 115920, *6-7 (dismissing claim where complaint speculated as to potential liability for particular defendant). Thus, the claims are insufficient as a matter of law.

**4.0    CONCLUSION**

Plaintiffs suffered a horrible tragedy, but Defendants did not cause it.  It is one thing to sue the estate of Adam Lanza, it is another to trample upon the First Amendment simply because they do not like what Defendants may have said or who they may have interviewed.  Suing Mr. Jones and the Infowars Defendants will not bring back the children.  If they want a stage to dispute the hoax theory, they have numerous media outlets to choose from; the judicial system is not that stage.  The only thing this litigation can accomplish is to force Defendants to expend unnecessary fees in defense of their right to freedom of speech.  And that is why Connecticut enacted its anti-SLAPP statute—to prevent this very type of suit.  The claims should be dismissed and Defendants should be awarded nominal, fees.

Dated: July 20, 2018.                       Respectfully submitted,

                                            /s/ Jay M. Wolman
                                            Jay M. Wolman, ct29129
                                            RANDAZZA LEGAL GROUP, PLLC
                                            100 Pearl Street, 14th Floor
                                            Hartford, Connecticut 06103
                                            Tel: 702-420-2001
                                            ecf@randazza.com

                                            Marc J. Randazza, *pro hac vice* forthcoming
                                            RANDAZZA LEGAL GROUP, PLLC
                                            2764 Lake Sahara Drive, Suite 109
                                            Las Vegas, Nevada 89117
                                            Tel: 702-420-2001
                                            ecf@randazza.com

                                            Attorneys for Infowars Defendants

Case No. 3:18-cv-01156-JCH

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 20th day of July 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>
*Self-Represented Defendant*

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

*Representative for Defendant*
*Genesis Communications Network, Inc.*

/s/ Jay M. Wolman
Jay M. Wolman