IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ERICA LAFFERTY, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:18-cv-01156-JCH |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX JONES, *et al.*, | ) | July 27, 2018 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR EXTENSION OF TIME AND FOR ENTRY OF A SCHEDULING ORDER**

Pursuant to Federal Rule of Civil Procedure 6(b), plaintiffs William Aldenberg, Jacqueline Barden, Mark Barden, Jennifer Hensel, Ian Hockley, Nicole Hockley, Erica Lafferty, Jeremy Richman, Carlos M. Soto, Donna Soto, Jillian Soto, Carlee Soto-Parisi, David Wheeler, Francine Wheeler move the Court to enter a scheduling order concerning remand briefing, Rule 12(b)(6) briefing, and the parties' automatic disclosure and planning conference obligations under Rule 26. Plaintiffs propose that the Court enter a briefing schedule which addresses jurisdiction first. Only after the Court determines it has subject matter jurisdiction should the parties proceed with briefing under Rule 12(b)(6).

**I.    Applicable Legal Standard**

Pursuant to Federal Rule of Civil Procedure 6(b), courts have "wide discretion" to grant requests for extensions and set briefing schedules. *Ramashwar v. City of New York*, 231 F. App'x 26, 28 (2d Cir. 2007); 4B Wright & Miller, Fed. Prac. & Proc. Civ. § 1165 (4th ed.) ("[F.R.C.P. 6(b)] gives the court extensive flexibility to modify the fixed time periods found throughout the rules, whether the extension is sought before or after the actual termination of the allotted time.").

**II.    Factual and Procedural Background.**

1

This action stems from the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. For a number of years, the defendants engaged in a campaign of harassment and abuse, in the course of which they published or conspired to publish many hurtful, outrageous, and malicious falsehoods about the plaintiffs—namely, that the Sandy Hook shooting was a hoax and that the plaintiffs did not lose their loved ones that day, but are in fact are faking their loved ones' deaths. The Court set out an initial scheduling order under which the defendants were required to file Motions to Dismiss by October 13, 2018.

### A.     The Allegations of the Complaint.

This action stems from of the shooting at Sandy Hook Elementary School in Newtown on December 14, 2012 that killed twenty first-grade children and six educators and wounded two others. Plaintiffs' Complaint ¶ 1, May 23, 2018. Overwhelming and indisputable evidence shows exactly what happened at Sandy Hook Elementary School on December 14, 2012. *Id.* ¶ 6. Nonetheless, certain individuals have persistently perpetuated a monstrous, unspeakable lie: that the Sandy Hook shooting was staged, and that the families who lost loved ones that day are actors who faked their relatives' deaths. *Id.* ¶ 6. The defendants all have participated in the generation, publication, and propagation of this lie, in the resulting harassment against the plaintiffs, and participated in a civil conspiracy to do both. See *id.* ¶¶ 30–39. They did so with knowledge that the statements were false or with reckless disregard as to whether or not they were true. See, *id.* ¶¶ 339, 343, 356, 359, 381, 391.

The Complaint detailed a campaign of abuse, harassment, and outrageous falsehoods by the defendants, and detailed how they combined to effect the various tortious actions that formed the backbone of that campaign. Wolfgang Halbig and Corey Sklanka combined for some number

of Halbig's more-than-twenty-two visits to Connecticut, during which they harassed the plaintiffs and generated "investigative" content for Halbig's websites and media appearances. *Id.* ¶¶ 37, 59–72, 80, 85.  Sklanka acted as Halbig's driver and camera operator in this venture. *Id.* ¶¶ 37, 60. Sklanka also purposefully facilitated Halbig's statements on his websites and in media appearances where Halbig repeatedly claimed that the Sandy Hook shooting was a hoax, that no one died there, and that the family members of those lost there are actors who fabricated their loved ones' deaths. *Id.* ¶¶ 37, 60, 59–72, 145–170, 189–219.

      Meanwhile, Alex Jones and the rest of the Jones defendants had built a highly profitable media empire based on conspiracy-minded falsehoods like those Halbig was propagating about the Sandy Hook shooting. *Id.* ¶¶ 90–100. Almost immediately after the shooting, he and his entities (which are under his control) also began claiming that the shooting was fake and that the families who had lost loved ones were actors. *Id.* ¶¶ 101–119. Jones and his entities combined with Halbig to promote Halbig's falsehoods and abuse by repeatedly having him on Jones's and his entities shows for the express purpose of eliciting Halbig's false and outrageous claims. *Id.* ¶¶ 73–88, 145–170, 189–219. On numerous occasions, Jones would agree with Halbig, or make on his own statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating their loved ones' deaths. See generally *id.* ¶¶ 145–170, 189–219. He and his entities also promoted Halbig's abusive and tortious activities by encouraging Halbig to continue them, helping Halbig solicit funds from Jones's followers, and sending Infowars personnel to document and promote Halbig's activities. See, *e.g.*, *id.* ¶¶ 70, 75–83, 207.

      Jones also independently made statements asserting that the Sandy Hook shooting was a hoax, that no one died there, and that the families who lost loved ones there were actors fabricating

3

their loved ones' deaths, and broadcast them to his millions of followers. See generally *id.* ¶¶ 145–335. He and his entities also recruited other guests and solicited and answered callers with the express purpose of eliciting, discussing, and promoting similar claims by them. See, *e.g.*, *id.* ¶¶ 123–128, 257–262, 292–298. Jones and his entities did this because it was a part of their business model: they cultivate an audience through the propagation of narratives revolving around paranoia, social anxiety, and political discord, a known motivator for some people. *Id.* ¶¶ 90–91. They acquire their audience's attention and trust, and then hawk them products in line with that worldview. *Id.* ¶¶ 93–94. This business model has proved extremely lucrative. *Id.* ¶¶ 94–96, 99. False claims that the Sandy Hook shooting was a hoax represented a perfect vehicle to promote it. *Id.* ¶ 95. Jones and his entities took the actions and published the statements detailed in this Complaint not because they believed they were true, but to make more money. *Id.* ¶¶ 97–100.

Defendant Genesis Communications distributed all the publications by the Jones defendants detailed in this Complaint to broadcasting affiliates all over the United States, vastly increasing their audience. *Id.* ¶¶ 38–39. Midas Resources combined with Genesis and the Jones defendants to help monetize his business model. *Id.* Ted Anderson, who owns both Genesis and Midas, was a follower of and frequent guest on the Jones defendants' shows. *Id.* Nonetheless, he continued to distribute the Jones defendants' programs. *Id.* In fact, the Jones defendants' programs formed the lion's share (and the most profitable) of the programs distributed by Genesis and Midas. *Id.* at 4 nn.3, 4.

Based on these allegations, the plaintiffs brought claims for invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy to commit the foregoing torts, and violations of the Connecticut Unfair Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*, against each of the defendants.

Nearly all the plaintiffs are residents of Connecticut. *Id*. ¶¶ 22–28. Defendant Corey Sklanka is a resident of Connecticut. *Id.* ¶ 37.

### B. The Notice of Removal.

The Jones defendants removed the case to this Court on July 13, 2018. They claim diversity jurisdiction as the sole basis for federal subject matter jurisdiction. The plaintiffs, however, are citizens of Connecticut; so is defendant Sklanka. Notice of Removal ¶¶ 6, 15, D. Ct. Doc. 1, July 13, 2018. Thus on the face of the pleadings, there is no diversity jurisdiction.

In an effort to manufacture complete diversity, the Jones defendants claim that Sklanka is fraudulently joined, asserting that the plaintiffs' claims against Sklanka cannot succeed.

On July 20, 2018, the Jones defendants filed a Rule 12(b)(6) motion to dismiss, invoking Conn. Gen. Stat. Ann. § 52-196a. They claim that none of the plaintiffs' claims against them have merit.

On July 13, 2018, defendant Wolfgang Halbig filed a Rule 12(b)(6) motion to dismiss.

Although the plaintiffs have until August 12, 2018, to file a motion to remand, they plan to move the Court to remand the case to Connecticut Superior Court for lack of subject matter jurisdiction on July 30, 2018 or shortly thereafter.

Defendants are presently scheduled to file Motions to Dismiss by October 13, 2018.

### III. PROPOSED BRIEFING SCHEDULE.

Plaintiffs move the Court to set a briefing schedule which first addresses jurisdiction in two phases, as further set forth below. Plaintiffs propose that the Court order Rule 12(b)(6) briefing to

proceed only after it addresses jurisdiction. The plaintiffs have filed no previous motions for extension of time on any time limitation.

**A.      Determination of Subject Matter Jurisdiction.**

Phase One:

Plaintiffs' Motion to Remand will be filed on or about July 30, 2018.

Defendants' Memoranda in Opposition shall be filed on or before August 29, 2018.

Plaintiffs' Reply Briefs shall be filed by September 12, 2018.

Phase Two

The need for compliance with the deadlines in Phase Two will arise only if the Court determines it has jurisdiction after considering the parties' briefing in Phase One.

1) Motions to Dismiss

> The Jones defendants filed their Rule 12(b)(6) Motion on July 20, 2018, and defendant Wolfgang Halbig filed his motion to dismiss on July 14, 2018. The deadline for all defendants' motions to dismiss will be 21 days after the Court rules whether it has jurisdiction.
>
> The deadline for plaintiffs to file their Memoranda in Opposition to all of the defendants' Rule 12(b)(6) Motions shall be 21 days after the defendants' deadline for filing their Rule 12(b)(6) Motions.
>
> More particularly, plaintiffs' deadline to respond to the Jones Defendants' and Halbig's Motions to Dismiss shall be suspended until the Court rules concerning subject matter jurisdiction after consideration of the Phase One briefing and, if necessary, the Phase Two briefing.  In the event the Court determines that it has jurisdiction, plaintiffs' deadline to respond to the Jones defendants' and Halbig's Motions to Dismiss shall be the same as plaintiffs' deadline to oppose the other defendants' Motions to Dismiss.
>
> The defendants' Reply Briefs shall be filed fourteen days after the filing of plaintiffs' Memoranda in Opposition.

2) Rule 26 Automatic Disclosures and Report of the Parties' Planning Conference.

> These deadlines and obligations shall be stayed pending the Court's Ruling on Phase One.

**IV.    The Court Should Enter Plaintiffs' Scheduling Order.**

    **A.    The Parties' Positions**.

Counsel for the Jones defendants is unable to obtain his clients' position at this time, but will advise this Court of it as soon as he is able to obtain it.

Defendant Wolfgang Halbig's position is: "I do not consent to an extension for Plaintiffs to respond to my motion to dismiss, since I am prejudiced by delay.  We must assume the court has jurisdiction until it rules that it does not, and if it does not, then your response will be ready to go in the state court.  For the same reason I do not consent to a suspension or stay of other deadlines, nor of the 21-day time limitation, you propose to put on my right to file additional motions to dismiss. I note that my motion to dismiss was filed in the state court on July 12th, not July 14th.  The deadline for Plaintiffs' response, per the federal court's order, is August 2nd."

Defendant Cory Sklanka consents to the plaintiffs' proposed briefing schedule.

Defendant Midas Resources has no objection to the proposed briefing schedule at this time.

Defendant Genesis Communications has no objection to the proposed briefing schedule at this time.

    **B.    The Court Should Address Subject Matter Jurisdiction First.**

"Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (striking down the doctrine of "hypothetical jurisdiction" by which difficult subject matter jurisdiction questions were bypassed to allow the district courts to resolve cases on easier merits arguments).  It is elementary that the Court must address its jurisdiction before turning to substantive issues.  The current ad hoc briefing

7

schedule requires briefing on the defendants' motion to dismiss before briefing on whether this Court has jurisdiction.

Moreover, a briefing schedule would allow the parties and this Court to deal with the relevant issues most efficiently. See *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting district courts' "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"). There are numerous plaintiffs and defendants in this case. So far, at least two defendants have submitted multiple motions on different timelines. Neither the plaintiffs nor this Court should have to respond to similar motions by various defendants piecemeal.  Even under circumstances with far stronger countervailing concerns, courts consider the efficiency of resolving related motions simultaneously sufficient "good cause" for amendments to already-existing schedules. See, *e.g.*, *United States v. Cohan*, No. 3:11-CV-412 CSH, 2012 WL 4758142, at *2 (D. Conn. Oct. 5, 2012) (noting that courts "consider[ ] the efficiency gained by addressing the summary judgment issues simultaneously to constitute good cause" in allowing consideration of untimely cross-summary judgment motion); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2017 WL 3613663, at *2 (S.D.N.Y. Aug. 21, 2017) (ordering consolidated briefing of motions to dismiss because doing so "would allow Defendants to efficiently brief the issues without needing to duplicate arguments").

Finally, staying deadlines pending a determination of subject matter jurisdiction is generally appropriate.  *Cf. Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.,* 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").

For these reasons, plaintiffs request their Motion be granted.

THE PLAINTIFFS,

**Respectfully submitted,**

By     **/s/ William Bloss, ct01008**
**WILLIAM BLOSS, ct01008**
**MATTHEW S. BLUMENTHAL, ct30448**
KOSKOFF KOSKOFF & BIEDER
350 FAIRFIELD AVENUE
BRIDGEPORT, CT  06604
bbloss@koskoff.com
mblumenthal@koskoff.com
Telephone: (203) 336-4421
Fax: (203) 368-3244

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2018, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing under the court's CM/ECF System.

                                                 /s/ William M. Bloss, ct01008
                                            WILLIAM M. BLOSS, ct01008
                                            MATTHEW S. BLUMENTHAL, ct30448