### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERICA LAFFERTY; DAVID WHEELER; FRANCINE WHEELER; JACQUELINE BARDEN; MARK BARDEN; NICOLE HOCKLEY; IAN HOCKLEY; JENNIFER HENSEL; JEREMY RICHMAN; DONNA SOTO; CARLEE SOTO-PARISI; CARLOS M. SOTO; JILLIAN SOTO; and WILLIAM ALDENBERG, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX EMRIC JONES; INFOWARS, LLC; FREE SPEECH SYSTEMS, LLC; INFOWARS HEALTH, LLC; PRISON PLANET TV, LLC; WOLFGANG HALBIG; CORY T. SKLANKA; GENESIS COMMUNICATIONS NETWORK, INC.; and MIDAS RESOURCES, INC., <br><br> Defendants. | Case No. 3:18-cv-01156-JCH <br><br> September 25, 2018 |

## OPPOSITION TO MOTION TO REMAND

Cory Sklanka had nothing to do with the alleged defamation and other claims asserted by Plaintiffs. They cannot avoid this Court's jurisdiction merely by naming him and claiming, unsupported by evidence, that he, somehow, is liable to them. Defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC (hereinafter "Infowars Defendants") hereby oppose Plaintiffs' Motion to Remand (Dkt. No. 37) and, pursuant to the Order of August 2, 2018 (Dkt. No. 44), show cause why that motion should not be granted.

**1.0    PROCEDURAL HISTORY**

On May 23, 2018, Plaintiffs executed a Summons and Complaint in the Connecticut Superior Court in the Judicial District of Fairfield, at Bridgeport, alleging claims for 1) Invasion of Privacy by False Light & Civil Conspiracy; 2) Defamation & Defamation per se & Civil Conspiracy; 3) Intentional Infliction of Emotional Distress & Civil Conspiracy; 4) Negligent Infliction of Emotional Distress & Civil Conspiracy; and 5) Violation of the Connecticut Unfair

Trade Practices Act, against the Infowars Defendants, Wolfgang Halbig, Midas Resources, Inc., Genesis Communications, Inc., and Cory Sklanka. *See* Dkt. No. 1-1. On July 13, 2018, the Infowars Defendants filed a timely Notice of Removal of that action to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441(a), & 1446. *See* Dkt. No. 1.

Although the Notice of Removal observed that Mr. Sklanka is a Connecticut citizen, the Infowars Defendants also set forth that he was not properly joined as a defendant under 28 U.S.C. § 1441(b)(2) & 1446(b)(2)(A). *See id*. at ¶¶ 15 & 18. The Infowars Defendants thereupon explained why he was not properly joined, as there is no possibility of any cause against Mr. Sklanka. *See id*. at ¶¶ 19-24, incorporated herein by reference.

Plaintiffs filed a motion to remand and memorandum in support thereof, asserting that Mr. Sklanka was properly joined. *See* Dkt. Nos. 37 & 38. Plaintiffs' motion consisted entirely of argument based on allegations in their Complaint without any evidence in support thereof[1]. *See id*. Subsequently, Mr. Sklanka filed a motion to dismiss and memorandum in support thereof. *See* Dkt. Nos. 45-46. That motion expounds upon the arguments made by the Infowars Defendants in their Notice of Removal[2]. Mr. Halbig also filed an affidavit evidencing Mr. Sklanka's absence of liability. *See* Dkt. No. 47. Mr. Sklanka's motion and Mr. Halbig's affidavit show that Mr. Sklanka was joined as a defendant merely for driving Mr. Halbig, without making any contribution to the speech giving rise to Plaintiffs' claim for damages. By this measure, had Mr. Halbig taken a taxi around Sandy Hook, the Plaintiffs could have sued the taxi driver in order to keep this case out of federal court.

**2.0    LEGAL STANDARD**

Ordinarily, Mr. Sklanka's Connecticut citizenship would defeat diversity of citizenship and require remand[3]. *See* 28 U.S.C. §§ 1332 & 1441. However, "a plaintiff may not defeat a federal

---

[1]    Pursuant to this Court's Orders of August 2, 2018 (Dkt. Nos. 42 & 43), Plaintiffs' obligation to respond to Mr. Sklanka's motion to dismiss appears stayed until 21 days after adjudication of the motion to remand. The Infowars Defendants, Midas Resources, and Mr. Halbig had also filed earlier motions to dismiss (Dkt. Nos. 11, 21, 22, 31, & 32), which are also stayed.
[2]    To the extent applicable, the Infowars Defendants incorporate Mr. Sklanka's arguments by reference.
[3]    Plaintiffs assert no basis other than citizenship of Mr. Sklanka in support of remand.

court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco. Inc.,* 138 F.3d 459, 460-61 (2d Cir. 1998). In *Pampillonia*, the Second Circuit set forth the test, stating that "[i]n order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court."[4] *Id*. at 461.

As this Court has observed, "[i]n conducting a fraudulent joinder inquiry, courts can look beyond the pleadings to determine if the pleadings can state a cause of action" as this is a jurisdictional issue. *Read v. Nationwide Mut. Ins. Co,* No. 3-06-cv-00514 (JCH), 2006 U.S. Dist. LEXIS 68299, at *6 (D. Conn. Sep. 13, 2006) (Hall, U.S.D.J.; internal quotation marks and citation omitted); *Oliva v. Bristol-Myers Squibb Co.,* No. 3-05-cv-00486 (JCH), 2005 U.S. Dist. LEXIS 35881, at *7-8 (D. Conn. Dec. 15, 2005) (same). Here, the affidavit of Mr. Halbig (Dkt. No. 47), in conjunction with the deficiencies of the Complaint, shows that Plaintiffs have no possibility of stating a claim against Mr. Sklanka, even were they to attempt to amend. Thus, the motion to remand should be denied.

**3.0    ANALYSIS**

    **3.1    Plaintiffs' Threadbare Allegations Do Not Give Rise to a Possible Claim**

As set forth in the Infowars Defendants' Notice of Removal, the allegations in the Complaint against Mr. Sklanka are limited:

> He is identified as working closely with defendant Halbig by acting as driver and camera operator and "on information and belief, participating in the operation of" a website and broadcasts. Complaint at ¶ 37. He allegedly "facilitated" Halbig and "assisted and was present with Halbig when he filmed and harassed children

---

[4]     As correctly noted by Plaintiffs, the Infowars Defendants do not claim "outright fraud", only that there is no possibility a cause of action may be stated against Mr. Sklanka.

- 3 -

> families," not identified as Plaintiffs, "on June 2, 2015." *Id*. at ¶ 60. He allegedly "acted as Halbig's driver, and actively facilitated [Halbig's] appearance on Infowars." *Id*. at ¶ 80. He is vaguely alleged to have somehow acted with other defendants to "develop, disseminate, and propagate" the allegedly false statements. *Id*. at ¶ 85. He is also allegedly a "servant, agent, apparent agent, employee, and/or joint venturer" of other defendants. *Id*. at ¶ 88.

Dkt. No. 1 at ¶ 19.

In their motion to remand, Plaintiffs generally highlight paragraphs 37, 59-72, 80, 85, 145-170, 189-219 of their Complaint, in their discussion of Mr. Sklanka specifically. Dkt. No. 38 at 2-3. Other than paragraph 65 of the Complaint, which asserts Mr. Sklanka "participated" in Mr. Halbig's alleged videotaping outside St. Rose of Lima in Newtown, Connecticut, which was already alleged in paragraph 60, none of the other paragraphs in the Complaint cited by Plaintiffs mention Mr. Sklanka or discuss any activities allegedly connected to him. In fact, none of the statements or publications that Plaintiffs assert give rise to their claims relate to any statement on the website, SandyHookJustice.com, that Plaintiffs allege Mr. Sklanka "participat[ed] in the operation" of. Dkt. No. 1-1 at ¶ 37.

Plaintiffs also assert that, if given the opportunity, they would amend their Complaint to assert that Mr. Sklanka "actively assisted" the operation of two websites (unrelated to the statements giving rise to the Complaint) through September 2016, that Mr. Sklanka "agreed with Halbig to facilitate Halbig's activities", that he knew those two websites had the alleged purpose of publishing allegedly defamatory material (i.e. the claim that the shooting was a hoax), that Mr. Sklanka posted an article on MonteFrank.com regarding two non-plaintiffs on September 3, 2016, that Mr. Sklanka allegedly broadcast now-deleted podcasts under a pseudonym (unrelated to the statements giving rise to the Complaint) regarding the hoax claim, and that Plaintiffs were unaware of Mr. Sklanka's role until the past year[5]. Dkt. No. 38 at 20-21.

---

[5] Infowars Defendants do not dispute that Plaintiffs may have an opportunity to amend. As discussed below, however, the putative amendments do not support remand.

Although Plaintiffs recognized that the Court may look beyond the pleadings, they offered no evidence in support of remand. *See* Dkt. No. 38 at 7 citing *Bldg. & Const. Trades Council of Buffalo, New York & Vicinity v. Downtown Dev., Inc.,* 448 F.3d 138, 150 (2d Cir. 2006). In contrast to Plaintiffs' non-evidenced allegations, the affidavit of Mr. Halbig presents clear and convincing evidence (and the only record evidence) that Mr. Sklanka cannot possibly be liable to Plaintiffs. As averred by Mr. Halbig:

a) Mr. Sklanka did not act as a cameraman for Mr. Halbig (Dkt. No. 47 at ¶ 1);

b) Mr. Sklanka had nothing to do with the SandyHookJustice.com website (*id.*); Mr. Sklanka co-hosted no broadcasts (*id.*);

c) Mr. Sklanka did not harass children at the church (*id.* at ¶ 2);

d) Mr. Sklanka did not videotape children at the church (*id.*);

e) Mr. Sklanka did not assist Mr. Halbig in running any website (*id.*);

f) Mr. Sklanka "had nothing to do" with Mr. Halbig's Infowars appearance (*id*. at ¶ 3); Mr. Sklanka did not act with Mr. Halbig in developing, disseminating or propagating any of the allegedly false statements (*id*. at ¶ 4);

g) Mr. Sklanka was not Mr. Halbig's agent, apparent agent, employee, servant, or joint venture at any time (*id*. at ¶ 5); and

h) Mr. Sklanka's sole relationship to Mr. Halbig was as a driver in Connecticut (*id.* at ¶¶ 1, 2 & 5).

In the month and a half since Mr. Halbig filed his affidavit, Plaintiffs have not supplemented the record with any countervailing evidence. Neither have they sought jurisdictional discovery to test Mr. Halbig's averments. Although Plaintiffs sought and obtained a stay of discovery (Dkt. Nos. 30 & 42), a district court "may have... to authorize... discovery" on the issue of subject matter jurisdiction. *Cantor Fitzgerald, L.P, v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996) (discussing a motion to remand); *see also Fein v. Chrysler Corp.*, No. 98 Civ. 4113 (CPS), 1998 U.S. Dist. LEXIS 15644, 1998 WL 34032284, at *10 (E.D.N.Y. Sept. 29, 1998) ("[T]he cases indicate a preference, even a requirement, for jurisdictional discovery, if necessary [regarding a

motion to remand]."). Having forfeited the opportunity to take jurisdictional discovery and contest Mr. Halbig's affidavit, its unrebutted nature presents clear and convincing evidence that no claim lies against Mr. Sklanka.

### 3.2 Plaintiffs Failed to State a Claim Against Mr. Sklanka

None of the five claims alleged against Mr. Sklanka are viable. As argued by Mr. Sklanka in his motion to dismiss (Dkt. Nos. 45 & 46), incorporated herein by reference, the Complaint is subject to dismissal as to him under Fed. R. Civ. P. 12(b)(6). Many of Mr. Sklanka's arguments mirror those set forth in the Infowars Defendants' motion to dismiss (Dkt. Nos. 21 & 22). Some Circuits hold that fraudulent joinder claims cannot rest on a common defense that equally disposes of the claims against all other defendants. *See Smallwood v. Illinois Central RR Co.,* 385 F.3d 568 (5th Cir. 2004) (en banc); *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108 (3d Cir. 1990). However, to the extent applicable here, the arguments as to the overall sufficiency of the claims as to the defendants generally are incorporated herein by reference and show that there is no possibility of success against any defendant, including Mr. Sklanka. Infowars Defendants will otherwise address their arguments specifically to the claims against Mr. Sklanka which, on their own, are independently subject to dismissal. Such is in further accordance with the Court's order (Dkt. No. 43) that consideration of that motion is stayed until resolution of the motion to remand.

### 3.2.1 Plaintiffs Make No Direct Claim in Tort Against Mr. Sklanka

In their motion to remand, Plaintiffs do not address specific actions taken by Mr. Sklanka that directly give rise to claims for false light, defamation, or intentional or negligent infliction of emotional distress. *See* Dkt. No. 38 at 14-16. Instead, all arguments discuss "defendants" as a whole. *Id*.

First, there is no direct claim for false light invasion of privacy. "The definition of false light invasion of privacy is as follows: One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity

of the publicized matter and the false light in which the other would be placed." *Allen v. Verizon Wireless*, 2013 U.S. Dist. LEXIS 80228, at *27 (D. Conn. June 6, 2013) (Hall, U.S.D.J.), quoting *Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448 (D. Conn. 2003). There is no allegation or evidence that Mr. Sklanka, himself, gave publicity to a matter concerning any Plaintiff. Merely driving Mr. Halbig around is not giving publicity to the Plaintiffs. Even if Plaintiffs were permitted to amend their complaint, they do not assert that Mr. Sklanka's alleged article gave publicity to any one of them.

Second, there is no direct claim for defamation. Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement." *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013), quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009). There is no allegation or evidence that Mr. Sklanka, himself, published any statement, let alone a defamatory one, concerning any Plaintiff. Merely driving Mr. Halbig around is not publication. Even if Plaintiffs were permitted to amend their complaint, they do not assert that Mr. Sklanka's alleged article identified any one of them or that their reputation(s) suffered on account thereof.

Third, there is no direct claim for intentional infliction of emotional distress. To recover, Plaintiffs must prove that:

> (a) defendants intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of [its] conduct; (b) defendants' conduct was extreme and outrageous; (c) defendants' conduct caused the plaintiff's distress; and (d) the emotional distress suffered by the plaintiff was severe. The standard in Connecticut for conduct reaching the level of "extreme and outrageous" is defined as "that which exceeds all bounds usually tolerated by a decent society, of a nature

which is especially calculated to cause, and does cause, mental distress of a very serious kind."

*Mercer v. Brunt*, 272 F. Supp. 2d 181, 188, 2002 U.S. Dist. LEXIS 26561 (D. Conn. 2002) (citations omitted).  Here, there is no factual basis to suggest Mr. Sklanka intended to inflict emotional distress or knew it was likely.  Driving Mr. Halbig is neither extreme nor outrageous conduct; if it were, every taxi, Uber, and bus driver in the state could be liable for the actions of any passenger.  Even if Plaintiffs were permitted to amend, they have not identified specific statements or conduct of Mr. Sklanka that is extreme and outrageous.  Instead, they make reference to hearsay about podcasts and articles that are not claimed to be extreme or outrageous.  Dkt. No. 38 at pp. 20-21.

Fourth, there is no direct claim for negligent infliction of emotional distress against Mr. Sklanka.  Under Connecticut law:

> [t]he elements of negligent infliction of emotional distress are: 1) that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; 2) the plaintiff's distress was foreseeable; 3) the emotional distress was severe enough that it might result in illness or bodily harm; and 4) the defendant's conduct was the cause of the plaintiff's distress.

*Adams v. Hartford Courant*, No. 3-03-cv-0477 (JCH), 2004 U.S. Dist. LEXIS 8546, at *14 (D. Conn. May 14, 2004) (Hall, U.S.D.J.)  Mr. Sklanka driving Mr. Halbig did not create an unreasonable risk of causing Plaintiffs emotional distress.  Driving a person does not make emotional distress foreseeable.  And there is no basis that driving Mr. Halbig caused Plaintiffs' distress.  Even if Plaintiffs were to amend, neither the website nor podcasts created a foreseeable, unreasonable risk and there is no suggestion the Plaintiffs' distress was caused by either.

Just as Mr. Sklanka is not liable at common law, he is not liable under CUTPA.  The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350 (2010). Although all three criteria need not be satisfied, at least one must. *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609-10, 119 A.3d 1139, 1143 (2015). Driving Mr. Halbig is neither unlawful nor unfair, nor is it inherently immoral, unethical, oppressive, or unscrupulous. And such driving could not have harmed Plaintiffs as consumers, competitors, or businessmen.

Moreover, Mr. Sklanka was not engaged in trade or commerce. Even an amended complaint, including allegations of a website article and podcasting, would not meet these hurdles. That Mr. Sklanka may have even developed some of the alleged statements that were later disseminated by one or more of the other defendants for profit (as argued at Dkt. No. 38 at 17) does not place Mr. Sklanka in commerce. Plaintiffs' citation to *Nastro v. D'Onofrio*, 263 F. Supp. 2d 446 (D. Conn. 2003) is inapposite. In *Nastro*, the conduct at issue was deemed in furtherance of prior conduct that was already adjudicated to be an unfair trade practice by one of those very same defendants. 263 F. Supp. 2d at 457-458. Here, Mr. Sklanka's driving of Mr. Halbig (or even alleged website and podcasting) had nothing to do with any trade or commerce by any other defendant at the time he did it.

### 3.2.2   Plaintiffs Cannot Proceed with their Conspiracy Claims

As Mr. Sklanka did not, himself, commit any tortious or otherwise actionable conduct, Plaintiffs primarily argue that he is liable in civil conspiracy. *See* Dkt. No. 38 at 11-14. Counts One through Four of the Complaint all allege civil conspiracy as part of the underlying tort, pleading for each:

   a) The defendants combined to conduct their campaign of harassment and abuse, which included numerous unlawful acts or lawful acts by unlawful means.

   b) The defendants combined to perform these unlawful acts pursuant to their scheme to harass and abuse the plaintiffs and in furtherance of that scheme.

Complaint at ¶¶ 344, 345, 357, 358, 370, 371, 382 & 383. Plaintiffs also make general allegations that the defendants, presumably including Mr. Sklanka, "acted together to develop, disseminate, and propagate" the allegedly false statements. *Id.* at ¶¶ 84-85.

First, under Connecticut law, "there is no independent claim of civil conspiracy. Rather, the action is for damages caused by acts committed pursuant to a formed conspiracy rather than by the conspiracy itself. Thus, to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 266 Conn. 747, 779 n.37 (2003) (internal citation and quotation marks omitted). As a result, a plaintiff must "allege the commission of a tortious act in furtherance of the conspiracy, which of course is necessary to establish liability for civil conspiracy, which is not an independent cause of action, but rather a separate legal basis upon which two or more persons can intentionally combine to commit an underlying legal wrong." *Weissman v. Koskoff, Koskoff & Bieder, P.C.,* No. HHDCV106012922S, 2011 Conn. Super. LEXIS 181, at *29 (Super. Ct. Jan. 19, 2011). As discussed above and in the Infowars Defendants' motion to dismiss, as well as those by Mr. Sklanka and Midas Resources, there are generally no substantive torts alleged that survive scrutiny.

Second, a conspiracy requires that "one or more persons, by express or tacit agreement, act in combination with another for a particular purpose or to attain a particular end." Harp, supra at 781. Notwithstanding even the putative amended complaint's claims as to Mr. Sklanka, the evidence of record (i.e. Mr. Halbig's affidavit) establishes that Mr. Sklanka was not party to any such agreement or combination.

Mr. Sklanka had no actual role in the websites. Merely driving Mr. Halbig in some unspecified manner does not create a conspiracy. Even if Mr. Sklanka were a cameraman as well and bothered some third parties at a church, there is no basis to suggest an agreement or

combination to achieve the purpose of harming Plaintiffs. The sole allegation of semi-specific conduct by Mr. Sklanka, the June 2, 2015, event at the church, does not mention Plaintiffs at all. Complaint at ¶ 60. In fact, the June 2, 2015 alleged incident appears nowhere in the so-called "Campaign of Abuse." *Id.* at ¶¶ 101–end.

Plaintiffs' case citations demonstrate the absence of a possible conspiracy claim against Mr. Sklanka. In *Miles v. Perry*, 11 Conn. App. 584, 608-09, 529 A.2d 199, 212 (1987), concert of action necessary to support a conspiracy to defame was found where:

> all of the defendants carefully organized, called, and orchestrated the church meeting, prepared the texts, which were then read by one or more of the defendants at the meeting, and selected the slides reproducing various checking transactions which were then shown at the meeting. Furthermore, all of the defendants spoke at the meeting and acted as a unified whole.

Mr. Sklanka took no similar actions regarding the statements of Mr. Halbig and the Infowars Defendants alleged in the Complaint. In *Rea v. Rubino*, No. HHDCV085019382S, 2010 Conn. Super. LEXIS 3390, at *3-4 (Super. Ct. Dec. 30, 2010), a claim for conspiracy to violate CUTPA was permitted to proceed where a hospital's staff allegedly helped a physician to modify records of medical malpractice; here, Mr. Sklanka had no similar granular involvement with the ultimate publications at issue. As Mr. Sklanka lacks the requisite concert of action, the conspiracy claim fails.

Plaintiffs have suggested they might replead to allege Mr. Sklanka's liability for aiding and abetting. *See* Dkt. No. 38 at 14 n. 4. Such fares no better. "To sustain a cause of action for aiding and abetting, a plaintiff is required to plead and prove: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Streeter v. Exec. Jet Mgmt.*, No. X01CV020179481S, 2004 Conn. Super. LEXIS 2304, at *5-6 (Super. Ct. June 29, 2004). Here, aside from the absence of a wrongful act by the other defendants, Mr. Sklanka did

not aid the Infowars Defendants. There is no basis to suggest Mr. Sklanka was aware of his role in the alleged torts by the Infowars Defendants when he drove Mr. Halbig (or even published his own article or podcasted). Finally, driving Mr. Halbig did not substantially assist the subsequent publications and statements at issue.

### 3.2.3 Plaintiffs' Claims Against Mr. Sklanka are Time-Barred

The last dated action attributed to Mr. Sklanka in the Complaint was June 2, 2015. *See* Dkt. No. 1-1 at ¶ 60. The action was commenced May 23, 2018. Thus, the claim for negligent infliction of emotion distress is barred by the two-year statute of limitations. *See Conn. Gen. Stat.* § 52-584. There is no reason why his identity could not have been found sooner, warranting application of the discovery rule. *See Geiger v. Carey*, 170 Conn. App. 459, 490 (2017). Similarly, the defamation claims also are time-barred under the two-year limitation of Conn. Gen. Stat. § 52-597.

As to the remaining claims, Infowars Defendants agree that a three-year statute of limitations applies. *Conn. Gen. Stat.* §§ 42-110g(f) & 52-577. However, there is no allegation Mr. Sklanka took any action between May 23, 2015 and June 2, 2015 that gives rise to liability for false light invasion of privacy, intentional infliction of emotional distress, or CUTPA. Notably, the June 2, 2015 event does not itself relate to any of the injuries claimed by Plaintiffs, who are not alleged to have even been present.

Plaintiffs claim the statute of limitations is tolled by the "continuing course of conduct" doctrine. Dkt. No. 38 at 10. As recently set forth by the Connecticut Supreme Court:

> The continuous course of conduct doctrine generally requires proof that the defendant: (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such

> a continuing duty or some later wrongful conduct of a defendant related to the prior act.

*Bouchard v. State* Emples. Ret. Comm'n, 328 Conn. 345, 374-75, 178 A.3d 1023, 1039 (2018) (internal quotation marks and citations omitted). Setting aside the lack of an initial wrong, Mr. Sklanka owed no continuing duty after June 2, 2015, nor is there allegation of continual breach. There is no "special relationship", such as where the Plaintiffs were under Mr. Sklanka's control or there was a "close personal relationship", like an attorney-client relationship. *Id.* at 375.

Finally, Plaintiffs claim that the Complaint can broadly be read to include allegations regarding Mr. Sklanka through August 2016 regarding the SandyHookJustice.com website. Dkt. No. 38 at 10. They also claim they would amend the Complaint to include allegations regarding that website and the MonteFrank.com website, including publication of an article under a pseudonym on September 3, 2016. *Id.* at 20. However, the undisputed evidence, being the affidavit of Mr. Halbig, demonstrates that Mr. Sklanka was not involved in the websites, rendering that reading and amendment an exercise in futility.

### 3.3 Attorneys' Fees Should Not be Awarded

Assuming, arguendo, the Court remands the matter, fees should not be awarded. "Absent unusual circumstances" the plaintiff "may only recover attorney's fees if the 'removing party lacked an objectively reasonable basis for seeking removal.'" *CUSA, LLC v. Travelers, Co.,* No. 3:07-cv-00968 (JCH), 2007 U.S. Dist. LEXIS 76992, at *11 (D. Conn. Oct. 12, 2007) (Hall, U.S.D.J.) quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Infowars Defendants had a more than objectively reasonable basis for removal.

As in CUSA, the allegations of wrongdoing against Mr. Sklanka are sparse. Plaintiffs do not make specific argument for individual, direct liability of Mr. Sklanka. Neither did his alleged actions appear akin to those warranting a finding of conspiracy. And, Plaintiffs recognize that the claims could be deemed time-barred, but for application of the continuing course doctrine. First, CUSA has not argued that any of its non-CUIPA/CUTPA claims has any traction against DRE. *See* CUSA's Mot. to Remand at 4-7. Second, although CUSA's Complaint could be read to allege

sufficient facts to state a CUIPA/CUTPA claim against DRE, the allegations of wrongdoing were sparse. It was not unreasonable for defendants to think that the Complaint alleged facts that were clearly insufficient to maintain a CUTPA claim.

Cases cited by Plaintiffs are inapposite. Fees were awarded in *Ritacco v. Whole Life, Inc.*, No. 3:09-cv-792 (VLB), 2010 U.S. Dist. LEXIS 76750, at *7 (D. Conn. July 29, 2010) where the issue involved a settled issue of federal preemption in the face of undisputed facts. Such is not the case here. In *Massad v. Greaves*, 554 F. Supp. 2d 163, 167 (D. Conn. 2008), fees were awarded where the removal was untimely, and no federal question lay. That, again, is not present here. Rather, as set forth in *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.* 512 F. App'x 485, 492 (6th Cir. 2013) (internal citations omitted)*:*

> There are cases where it is obvious, according to settled state-law precedent, that a particular defendant is not liable, and no fees are appropriate in that case because the remand action itself should be denied. On the other hand, there are cases where according to state-law precedent it is obvious that the defendant may be liable, and in that case a fraudulent joinder claim would be frivolous. In between there is a spectrum of cases. And…removal in some—but not all—of these in-between cases must be considered objectively reasonable.

Here, should the Court issue a remand order, this case should be deemed on that spectrum. Of note, the arguments made by the Infowars Defendants are supported by the objectively reasonable arguments of the other defendants in their motions to dismiss. Thus, the request for fees should be denied.

### 4.0     CONCLUSION

Mr. Sklanka is not a proper defendant. There are no possible claims against him. His improper presence in this case, as the driver of a man who made some statements that did not mention any plaintiff, cannot be used to defeat diversity jurisdiction. The motion to remand should be denied.

| | |
|---|---|
| Dated: September 25, 2018. | Respectfully submitted, |
| | /s/ Jay M. Wolman |
| | Jay M. Wolman, ct29129<br>RANDAZZA LEGAL GROUP, PLLC<br>100 Pearl Street, 14th Floor<br>Hartford, Connecticut 06103<br>Tel:  702-420-2001<br>Fax: 305-437-7662<br>ecf@randazza.com |
| | Marc J. Randazza, *pro hac vice* forthcoming<br>RANDAZZA LEGAL GROUP, PLLC<br>2764 Lake Sahara Drive, Suite 109<br>Las Vegas, Nevada 89117<br>Tel:  702-420-2001<br>ecf@randazza.com |
| | Attorneys for Infowars Defendants |

Case No. 3:18-cv-01156-JCH

## CERTIFICATE OF SERVICE

I hereby certify that, on this 25th day of September 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

 I further certify that copies of the foregoing document are being served by electronic mail and U.S. Mail upon the parties at the addresses below:

Wolfgang Halbig
25526 Hawks Run Lane
Sorrento, FL 32776
<wolfgang.halbig@comcast.net>

Self-Represented Defendant

Ted Anderson
Genesis Communications Network, Inc.
190 Cobblestone Lane
Burnsville, MN 55337
<t.anderson@gcnlive.com>

Representative for Defendant
Genesis Communications Network, Inc.

 /s/ Jay M. Wolman
 Jay M. Wolman