**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ERICA LAFFERTY, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:18-CV-1156 (JCH) |
| v. | : | |
| | : | |
| ALEX EMERIC JONES, et al., | : | NOVEMBER 5, 2018 |
| Defendants. | : | |

**RULING RE: MOTION FOR REMAND (DOC. NO. 37)**

## I.    INTRODUCTION

Before the court is plaintiffs' Motion to Remand (Doc. No. 37).  In addition,

plaintiffs seek an award of attorney's fees.  Defendants argue that the Motion to

Remand should be denied because plaintiffs fraudulently joined a non-diverse party to

defeat diversity jurisdiction.[1]  For the reasons stated below, the Motion for Remand is

**GRANTED,** insofar as it seeks to remand the case, and **DENIED** insofar as it seeks

attorney's fees.

## II.    BACKGROUND

This case arises out of the shooting at Sandy Hook Elementary School in

Newtown, Connecticut, on December 14, 2012.  See Notice of Removal, Ex. 1

(Summons and Complaint) ("Complaint") (Doc. No. 1-1) ¶ 1.  Plaintiffs Erica Lafferty,

David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley,

---

[1] Defendants filed two Oppositions to the Plaintiffs' Motion to Remand.  The first was submitted by defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC.  See generally Infowars Defendants' Opposition to Motion to Remand (Doc. No. 51).  The second was submitted by defendant Midas Resources, Inc. See generally Midas Opposition (Doc. No. 54).  Significant portions of the two filings are identical, and they raise substantially the same arguments.  Defendant Halbig joined in the legal arguments of the Opposition filed by defendants Jones, et al.  See Halbig's Joinder in Other Defendants' Legal Arguments (Doc. No. 52).

Ian Hockley, Jennifer Hensel, Jeremy Richman, Donna Soto, Carlee Soto-Parisi, Carlos M. Soto, and Jillian Soto (collectively "plaintiffs"), filed suit against defendants Alex Emeric Jones, Infowars, LLC, Free Speech Systems, LLC, Infowars Health, LLC, Prison Planet TV, LLC, Wolfgang Halbig, Cory T. Sklanka, Genesis Communications Network, Inc., and Midas Resources, Inc. (collectively "defendants"), in the Superior Court, Judicial District of Fairfield at Bridgeport, Connecticut, on May 23, 2018. Id. Plaintiffs alleged that defendants are liable for (1) invasion of privacy by false light; (2) defamation; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; and (6) violation of Conn. Gen. Stat. § 42-110a, et. seq, the Connecticut Unfair Trade Practices Act ("CUTPA"). See id. ¶¶ 336–94.

On July 13, 2018, defendants filed a Notice of Removal. See generally, Notice of Removal (Doc. No. 1). Defendants argued that removal was proper because plaintiffs fraudulently joined the only non-diverse defendant, Cory Sklanka. See id. ¶ 18. They argued that plaintiffs' "sole purpose" in naming Sklanka as a defendant was to "attempt to break diversity," see id. ¶ 10, and that "there is no possibility, based on the pleadings, that [plaintiffs could] state a cause of action against Mr. Sklanka in state court," id. ¶ 19 (quotations and citations omitted).

On July 31, 2018, plaintiffs filed the Motion to Remand now pending before this court. See generally, Motion to Remand ("Mot. to Remand") (Doc. No. 37). In their Memorandum of Law in Support of the Motion to Remand ("Pls.' Mem. in Supp.") (Doc. No. 38), plaintiffs argued that this court lacks subject matter jurisdiction because (1) complete diversity of citizenship between the parties is lacking, and (2) defendants failed to meet their burden to prove that plaintiffs fraudulently joined. See Pls.' Mem. in

Supp. at 1.  Defendants Alex Jones, Infowars, LLC, Infowars Health, LLC, Free Speech Systems, LLC, and Prison Planet TV, LLC filed an Opposition to the Motion to Remand on September 25, 2018.  See Infowars Defendants' Opposition to Motion to Remand ("Infowars Defs.' Opp'n") (Doc. No. 51) at 1.  Defendant Midas Resources, Inc. filed an Opposition to the Motion to Remand on September 28, 2018.  See generally Midas Resources, Inc.'s Opposition to Motion to Remand ("Midas Opp'n") (Doc. No. 54).  Plaintiffs filed an Omnibus Reply to Defendants' Oppositions to Remand ("Pls.' Reply") (Doc. No. 57), on October 19, 2018.[2]

## III.    Legal Standard

Defendants bear the burden of proving that removal is proper.  See O'Donnell v. AXA Equitable Life Ins. Co., 887 F.3d 124, 128 (2d Cir. 2018) (citing California Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004)).  Federal courts strictly construe the removal statute, section 1441 of title 28 of the United States Code, and resolve any doubts against removability.  Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002) (holding that "statutory procedures for removal are to be strictly construed"); Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 201 (2d Cir. 2001).  Strict construction of the removal statute is consistent with congressional intent to restrict federal court jurisdiction, and due respect for principles of federalism and the independence of state courts.  See, e.g., Lupo v. Human Affairs Int'l, Inc., 28 F.3d 269, 274 (2d Cir. 1994).

---

[2] A closely related case, brought by a different plaintiff against the same defendants, is pending before this court.  See Sherlach v. Jones, 3:18-cv-01269 (JCH).  The plaintiff in Sherlach filed the same Omnibus Reply as the plaintiffs in this case.  The court will address Sherlach in a separate ruling.

Defendants may remove "any civil action of which the district courts . . . have original jurisdiction." 28 U.S.C. § 1441(a). Generally, district courts have diversity jurisdiction over an action only where all plaintiffs are citizens of different states from all defendants. Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806); Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460 (2d Cir.1998); 28 U.S.C. § 1332. However, plaintiffs may not join non-diverse defendants against whom they have no real claims, in an effort to defeat federal jurisdiction. The doctrine of "fraudulent joinder" is designed to prevent this tactic. See Briarpatch Ltd., L.P. v. Phoenix Pictures Inc., 373 F.3d 296, 302 (2d Cir. 2004).

Under the doctrine of fraudulent joinder, courts disregard the presence of non-diverse parties "if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." Briarpatch, 373 F.3d at 302 (citing Pampillonia, 138 F.3d at 461).[3] District courts in this Circuit strictly apply the "no possibility" standard. See Mihok v. Medtronic, Inc., 119 F. Supp. 3d 22, 34 (D. Conn. 2015) (collecting cases). Defendants bear the heavy burden of proving fraudulent joinder by clear and convincing evidence, "with all factual and legal ambiguities resolved in favor of plaintiff." Briarpatch, 373 F.3d at 302. To meet their burden, "defendants must do more than show that the plaintiff has failed to state a claim upon which relief can be granted." Read v. Nationwide Mut. Ins. Co., No. 3:06-CV-00514 (JCH), 2006 WL 2621652, at *1 (D. Conn. Sept. 13, 2006) (citing Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F.Supp.2d 177 (S.D.N.Y. 2003)).

---

[3] A defendant may also show that a fraudulent joinder has occurred by demonstrating, by clear and convincing evidence, that there has been "outright fraud" committed in the pleadings. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). The defendants do not make such a claim here.

In determining whether a fraudulent joinder occurred, the court may examine evidence outside of the pleadings, but only if that evidence "clarifies or amplifies claims actually made in the notice of removal." Wilmington Sav. Fund Soc'y, FSB v. Universitas Educ., LLC, 164 F. Supp. 3d 273, 284 (D. Conn. 2016) (quoting 16 Moore's Federal Practice – Civil § 107.52 (2018)) (alterations omitted). However, the court will not reach the merits of the case, "beyond determining whether the claim is arguable under state law." 16 Moore's Federal Practice – Civil § 107.52 (2018).

## IV.    DISCUSSION

Plaintiffs argue that this court is without jurisdiction, and this case must be remanded to the Connecticut Superior Court, because complete diversity of the parties is lacking, and because the defendants failed to meet their burden to demonstrate that Sklanka was fraudulently joined. See Pls.' Mem. in Supp. at 1. The defendants respond that the Motion to Remand should be denied because plaintiffs fraudulently joined Sklanka as a defendant, and he should be overlooked for the purposes of diversity, and this court therefore has jurisdiction over the underlying claims. See Infowars Defs.' Opp'n at 14; Midas Opp'n at 13. The parties do not dispute, however, that if Sklanka is properly joined, his Connecticut citizenship bars diversity jurisdiction and mandates a remand of this action to state court. See Infowars Defs.' Opp'n at 2 ("Ordinarily, Mr. Sklanka's Connecticut citizenship would defeat diversity of citizenship and require remand."); Midas Opp'n at 2 (same).

The question before this court, then, is whether there is any possibility that plaintiffs could assert their claims against Sklanka in state court. If there is such a possibility as to any of the plaintiffs' claims, the entire case must be remanded to state

court.  This is so because "absent complete diversity a case is not removable . . . .  A failure of complete diversity, unlike the failure of some claims to meet the requisite amount in controversy, contaminates every claim in the action."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 564 (2005).

A.     Sklanka's Alleged Conduct

References to Sklanka in the Complaint focus on the assistance he is alleged to have provided to another named defendant, Wolfgang Halbig.  Plaintiffs allege that Halbig "is the creator and operator of the defamatory and predatory websites SandyHookJustice.com and MonteFrank.com."  Compl. ¶ 36.  Halbig's website, SandyHookJustice.com, is alleged to have made "numerous false, outrageous, and defamatory statements about the plaintiffs," including, inter alia, that parents of the children killed in the shooting were paid actors, that the children killed in the shooting were not in fact related to their parents, and that the children were not killed in the shooting.  Id. ¶ 71.  Sklanka is alleged to have "worked closely with Halbig in Halbig's Sandy Hook 'investigative' work," id. ¶ 37, and to have "facilitated Halbig's harassing and defamatory activities in Connecticut."  Id. ¶ 60.  The Complaint alleges that Sklanka "acted as Halbig's driver [and] camera operator, helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  Id. Sklanka, the plaintiffs allege, was "at all relevant times a servant, agent, apparent agent, employee, and/or joint venturer of the Jones defendants."  Id. ¶ 87.  The Complaint also alleges that Sklanka and Halbig "acted together, and they both acted together with the Jones defendants, to develop, disseminate, and propagate many of the false statements described in [the] Complaint."  Id. ¶ 85.

Plaintiffs brought claims of invasion of privacy by false light, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and violation of CUTPA, against all defendants, including Sklanka; the plaintiffs also alleged a civil conspiracy to commit each of the substantive claims, with the exception of the alleged CUTPA violation.  See generally Compl.; see also Pls' Mem. in Supp. at 4.  As noted above, see supra, at 5–6, if the defendants cannot prove, by clear and convincing evidence, that there is no possibility plaintiffs could assert any of these claims against Sklanka, this matter must be remanded to the state court.  The court first addresses the defamation claims and related civil conspiracy claim against Sklanka.

B.     Defamation and Civil Conspiracy Claim Against Sklanka

Count Two of the Complaint alleges that the defendants, including Sklanka, are liable to plaintiffs for defamation, defamation per se, and civil conspiracy to commit defamation.  See Compl. ¶¶ 347–59.  In Connecticut, to state a claim of defamation, a plaintiff must show that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement."  Cweklinsky v. Mobil Chem. Co., 267 Conn. 210, 217 (2004).  "The statute of limitations for a defamation claim begins on the date of publication, [and] a new cause of action arises with each publication."  Id. at 224.  To state a claim of civil conspiracy, a plaintiff must make a prima facie showing of the following elements:

> (1) a combination between two or more persons, (2) to do a criminal or an unlawful act or a lawful act by criminal or unlawful means, (3) an act done by one or more of the conspirators pursuant to the scheme and in furtherance of the object, (4) which act results in damage to the plaintiff.

<u>Macomber v. Travelers Prop. & Cas. Corp.</u>, 277 Conn. 617, 635–36 (2006).  A claim of civil conspiracy must be joined with a substantive tort claim.  <u>Id.</u> at 636.

The Complaint alleges that Halbig's website "made numerous false, outrageous, and defamatory statements about the plaintiffs."  Compl. ¶ 71.  The Complaint also lists allegations of specific defamatory statements, published on Halbig's website, which referenced a number of the plaintiffs.  <u>Id.</u> ¶¶ 71(A)–71(D); <u>see</u> <u>also</u> Pls.' Mem. in Supp. at 12.  While the Complaint does not provide dates that these statements were published, it does allege that Halbig operated the website until August 2016.  <u>Id.</u> ¶ 71(E).  Plaintiffs also allege that Sklanka "helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  <u>Id.</u> ¶ 60.

Defendants argue that (1) the claims against Sklanka are time-barred, and (2) the evidence before the court, in the form of an Affidavit submitted by Halbig, establishes that there is no possibility that plaintiffs could raise claims against Sklanka.  The court addresses each argument in turn.

1.    Statute of Limitations

Defendants argue that plaintiffs' defamation claims against Sklanka are barred by Connecticut's two-year statute of limitations on such claims.  <u>See</u> Conn. Gen. Stat. § 52-597.  The defendants' argument rests on the fact that the "last dated action attributed to Mr. Sklanka in the Complaint was June 2, 2015," while the Complaint was filed on May 23, 2018.  Infowars Defs.' Opp'n at 12; <u>see</u> <u>also</u> Midas Opp'n at 12.  Plaintiffs argue that "the allegations about Sklanka's role in operating Halbig's websites meet <u>all</u> the relevant statutes of limitations."  Pls.' Reply at 9 (emphasis in original).

The Complaint alleges that multiple defamatory statements about the plaintiffs were published on Halbig's website, and that Halbig operated his website until August 2016.  If Halbig published any of the allegedly defamatory material within two years of the plaintiffs filing their Complaint, Halbig's conduct would fall within the statute of limitations.  Moreover, accepting as true the allegation in the Complaint that Sklanka helped operate Halbig's website, and that the website was operated through August, 2016, Sklanka could face liability for defamation if his actions involved the publication or dissemination of the alleged defamatory materials.  The Complaint also alleges that Sklanka acted together with Halbig and the other defendants "to develop, disseminate, and propagate many of the false statements described in [the] Complaint."  Compl. ¶ 85.  Though the Complaint is ambiguous as to whether these statements include those posted on Halbig's website, the court must resolve such ambiguities in favor of the plaintiffs.  See Briarpatch, 373 F.3d at 302.  In addition to potential liability for publishing defamatory material himself, Sklanka could face liability for civil conspiracy if Halbig published or disseminated defamatory information within the statute of limitations, pursuant to the alleged implied or actual agreement between Halbig and Sklanka.  See Compl. ¶ 85.

The court's role at this stage is not to address the merits of a dispute over Connecticut's statute of limitations on defamation claims.  Instead, its inquiry is limited to determining whether the defendants have shown, by clear and convincing evidence, that there is no possibility that the plaintiffs could raise a claim of defamation against Sklanka, based on the pleadings, which would fall within the statute of limitations.  Because, taking the facts in the Complaint as true and resolving factual and legal

ambiguities in favor of the plaintiffs, there is a possibility that the plaintiffs could raise claims against Sklanka that would fall within the statute of limitations—in particular, at least defamation and conspiracy—the court concludes that the defendants have failed to meet their burden.

2.     Halbig's Affidavit

Defendants' also rely heavily on an Affidavit submitted by Halbig.  See Affidavit of Wolfgang Halbig (Doc. No. 47) ("Halbig Affidavit").  Halbig avers, inter alia, that "Sklanka did not operate any camera; he did not have a camera; he has never touched a camera in my presence.  He has had nothing to do with SandyHookJustice.com, nor has he cohosted any broadcasts with me."  Id. ¶ 1.  The defendants argue that, "[i]n contrast to Plaintiffs' non-evidenced allegations, the affidavit of Mr. Halbig presents clear and convincing evidence (and the only record evidence) that Mr. Sklanka cannot possibly be liable to Plaintiffs."  Infowars Defs.' Opp'n at 5; see also Midas Opp'n at 9 (arguing that Halbig's Affidavit establishes that Sklanka was not part of a conspiracy).

However, the Complaint alleges that Sklanka "helped Halbig operate his website, and co-hosted broadcasts asserting that the Sandy Hook shooting was a hoax."  Compl. ¶ 60.  Moreover, Plaintiffs submitted an Affidavit, as part of their Reply, which avers that plaintiffs "possess audiovisual evidence that Sklanka co-hosted and/or participated in SandyHookJustice.com podcasts and/or other podcasts with Halbig."  Affidavit of Matthew S. Blumenthal (Doc. No. 57-1) ("Blumenthal Affidavit") ¶ 6.  Thus, contrary to defendants' assertions, Halbig's Affidavit is not "unrebutted."  See Midas Opp'n at 5.

Defendants further argue that Halbig's Affidavit "establishes" that Sklanka was not part of an agreement, either tacit or explicit, to engage in tortious activity, and that

the civil conspiracy claims could not possibly be raised in state court.  See Infowars

Defs.' Opp'n at 10; Midas Opp'n at 9.  First, the court notes that the Affidavit does not

address all the allegations in the Complaint.  Compare e.g., Compl. ¶ 71 with Halbig

Affidavit ¶¶ 1–5.  Further, as the court has noted, the Complaint alleges that Sklanka

"worked closely with Halbig in Halbig's Sandy Hook 'investigative' work, including acting

as driver and camera operator . . . [and] participating in the operation of

SandyHookJustice.com . . . ."  Compl. ¶ 37.  In his Affidavit, Halbig denies, inter alia,

that Sklanka did anything the plaintiffs allege but drive him.  Halbig Affidavit ¶ 2.

However, plaintiffs have countered with screenshots of Sklanka videotaping Halbig.

See Blumenthal Affidavit, Exhibit A.  Finally, while Halbig denies the allegation, see

Halbig Affidavit ¶ 4, the Complaint alleges that "Sklanka and Halbig acted together, and

. . . with the Jones defendants, to develop [and] disseminate" defamatory material.

Compl. ¶ 85.  As the case law makes perfectly clear, on a motion to remand, this court

is not trying the case.  See, e.g., Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314

F. Supp. 2d 177, 182 (S.D.N.Y. 2003); 16 Moore's Federal Practice – Civil § 107.52

(2018).  Resolving all ambiguities in plaintiffs' favor, see Briarpatch, 373 F.3d at 302,

the court concludes that the allegations are arguably sufficient to allege that Sklanka

participated in a conspiracy to commit tortious acts, see Harp v. King, 266 Conn. 747,

778–79 (2003) (holding complaint that failed to use the term "conspiracy" nevertheless

alleged a civil conspiracy, where plaintiff alleged "joint action" and "agreement" between

defendants); see also Zhaoyin Wang v. Beta Pharma, Inc., No. 3:14-CV-01790 (VLB),

2015 WL 5010713, at *5 (D. Conn. Aug. 24, 2015) ("Even allegations that are general

and at times in barebones language may be sufficient to defeat a claim of fraudulent joinder.") (quotation omitted).[4]

Whether Sklanka's actions were sufficient to establish liability for publishing defamatory materials, or for a civil conspiracy to do the same, are questions of pleading beyond the scope of a fraudulent joinder determination.  It is enough that the pleadings raise a possibility of recovery under state law.  In their removal and their Opposition to remand, the defendants in essence seem to want to have a trial on the merits in the context of the Motion to Remand.  See, e.g., Infowars Defs.' Opp'n at 13 (citing to the "undisputed evidence").  Defendants may not "use removal proceedings as an occasion to adjudicate the substantive issues of a case."  Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 182 (S.D.N.Y. 2003).  To the extent that the defendants' claims are contradictory to the plaintiffs', the court must resolve all factual and legal ambiguities in favor of the plaintiffs.  See Briarpatch, 373 F.3d at 302.  A determination of the merits, beyond whether a defamation claim is arguable under state law, is appropriately left to the state court.  See 16 Moore's Federal Practice – Civil § 107.52 (2018).

Taking the plaintiffs' allegations as true, and resolving factual and legal ambiguities in their favor, the court concludes that the defendants have failed to meet their burden of showing, by clear and convincing evidence, that the plaintiffs could not possibly raise any claim in state court against Sklanka.  Because the court has determined that complete diversity of the parties is lacking as to at least one claim in the

---

[4] Only allegations of fraud must be specific.  See Fed. R. Civ. P. 9(b).

case at issue, see supra at 9–12, this court lacks subject matter jurisdiction.  See Exxon Mobil Corp., 545 U.S. at 564; 28 U.S.C. § 1332.  Thus, the court need not reach the remaining claims against Sklanka.  Plaintiffs' Motion to Remand is granted insofar as it seeks to remand the case to the Superior Court, Judicial District of Fairfield, at Bridgeport, Connecticut.

        C.      <u>Costs, Expenses, and Attorney's Fees</u>

        In addition to seeking remand of the case, plaintiffs argue that they are entitled to just costs and actual expenses, including attorney's fees.  See Mot. to Remand at 21; 28 U.S.C. § 1447.  "Absent unusual circumstances, courts may award attorney's fees under [section] 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  Plaintiffs argue that "[a]ny reasonable survey of the law of fraudulent joinder, combined with the plaintiffs' allegations, would alert the defendants" that there was no objective basis for noticing removal.  Id.  Defendants argue that noticing removal was objectively reasonable because (1) the allegations against Sklanka are sparse; (2) plaintiffs made general allegations against all defendants; (3) the allegations against Sklanka were not clearly sufficient to warrant a finding of conspiracy; and (4) it was objectively reasonable to believe the actions were time barred.  See Infowars Defs.' Opp'n at 13.

        Notwithstanding plaintiffs' arguments to the contrary, the court concludes that the defendants had a basis, albeit thin, upon which to seek removal.  There was, for example, a question as to whether the claims against Sklanka were time-barred.  The defendants' presumably good-faith belief that the statute of limitations would require the termination of the only non-diverse defendant in the dispute was some basis, albeit a

failed one, upon which to believe this court had subject matter jurisdiction over the underlying complaint.  See Rose v. Horan, No. 17-CV-6408 (MKB), 2018 WL 4344954, at *4 n.7 (E.D.N.Y. Sept. 11, 2018) (noting that "the Court may consider a statute of limitations defense in considering allegations of fraudulent joinder").  Thus, plaintiffs request for fees is denied.

## V.    CONCLUSION

For the reasons stated herein, the Motion for Remand is **GRANTED**, and this case is **REMANDED** to state court.  Plaintiffs' request for costs and attorney's fees is **DENIED.**  Because this case is remanded to state court, the defendants' pending Motions to Dismiss (Doc. Nos. 11, 21, 31, and 45) are **TERMINATED AS MOOT**.  The Clerk is ordered to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 5th day of November, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge